Opinion issued July 7, 2015.



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00014-CV

_____

**HECTOR ESTRADA, ISELA ESTRADA, MARIA MARTINEZ, and JORGE GONZALES, Appellants**

**v.**

**DANER LEE CHESHIRE and LYNDON CHARLES CHESHIRE, Appellees**

On Appeal from the 61st District Court
Harris County, Texas
Trial Court Case No. 2012-01183

## O P I N I O N

This is a trespass to try title suit. Appellants, Hector Estrada, Isela Estrada, Maria Martinez, and Jorge Gonzales (collectively "the Estrada parties"), sued appellees Daner and Lyndon Cheshire to establish title to land by adverse

possession. The contested land was the northern portion of a larger piece of property described in its entirety as Tract 2, Block 5 of Timber Acres in Harris County ("Tract 2"). Both before and after suit was filed, Tract 2 was involved in a convoluted series of transactions. Following a bench trial, the trial court made findings of fact and conclusions of law determining the history of the title of both portions of Tract 2 and a neighboring property ("Tract 1") and the current rights of the parties to the property. On appeal, the Estrada parties challenge the legal and factual sufficiency of the trial court's judgment determining (1) that they did not have a valid deed for the northern portion of Tract 2; (2) that they failed to establish their claim by adverse possession; and (3) that Daner and Lyndon were the proper owners of the northern portion of Tract 2.[1]

We reverse and render judgment in favor of appellants.

## Background

In 1963, J.H. Hawkins conveyed the southern part of Tract 2 to Cecil and Mary Cheshire by warranty deed. In 1965, Joe and Nila Nettles conveyed the northern part of Tract 2 to Cecil Cheshire. In 1983, Cecil died, and his will, in which he left his entire estate to Mary, was admitted to probate. In 1984, Mary Cheshire conveyed the land she had co-owned with Cecil prior to his death—the

---

[1] The Estrada parties actually assert thirteen issues attacking the legal and factual sufficiency of various findings of fact made by the trial court and attacking the legal basis for the trial court's judgment. We have consolidated and reorganized these issues for purposes of our analysis in this opinion.

southern part of Tract 2—to James and Mercedes Van Gundy, who already owned the neighboring property, Tract 1, by warranty deed. Mary Cheshire's conveyance to the Van Gundys did not include the northern part of Tract 2 that she had inherited from Cecil.

James Van Gundy died in 2002, and, in March 2002, Mercedes Van Gundy and the Estrada parties entered into an earnest money contract and contract of sale involving Tract 1 and Tract 2. The earnest money contract and the contract of sale both stated that Van Gundy agreed to sell the Estrada parties "[Tracts] One (1) and Two (2) in Block (5), of TIMBER ACRES, SECOND SECTION, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 22, Page 13, of the Map Records of Harris County, Texas."[2] However, the warranty deed by which Van Gundy actually transferred the property to the Estrada parties transferred only Tract 1 and a portion of Tract 2 described as

> [a] tract of land out of the South portion of Tract 2, Block 5 of TIMBER ACRES, SECTION (2), a subdivision in Harris County, Texas, according to the map or plat recorded in Volume 22, Page 13, of the Map Records of Harris County, Texas, said tract being more particularly described by metes and bounds on Exhibit 'A' attached hereto and incorporated herein for all purposes."

---

[2] The Estrada parties initially included a third couple, Felipe Elguezabal and Maria E. Elguezabal, who with appellants constituted the "Group of Six." In 2004, the Group of Six divided Tracts 1 and 2 into three sections. Felipe and Maria Elguezabal's portion of the property does not involve any of the northern portion of Tract 2. However, the portions of the property allotted to both Hector Estrada and Isela Estrada and Maria Martinez and Jorge Gonzales contain part of the northern portion of Tract 2.

The metes and bounds description of the property conveyed by Van Gundy to the Estrada parties corresponded to the southern portion of Tract 2, which Mary Cheshire had conveyed to the Van Gundys by warranty deed. The warranty deed did not convey the northern portion of Tract 2. However, there was a fence around the entire property for more than ten years during the time the Van Gundys owned it, and the Van Gundys were assessed and paid the taxes on all of Tracts 1 and 2 during the time they owned the property.

In 2005, Mary Cheshire died, and on July 26, 2005, Harris County Probate Court No. 1 entered a judgment that Daner Cheshire and Lyndon Cheshire were her sole heirs and that each was entitled to one-half of her estate.

In 2010, the Estrada parties first realized that their 2002 deed from Van Gundy did not convey the northern portion of Tract 2 when they were unable to obtain building permits for the property due to the defect in the title.

In 2012, the Estrada parties sued Mary Cheshire's heirs, Daner and Lyndon Cheshire, seeking clear title and undisputed ownership of the northern portion of Tract 2 ("the Disputed Property"). The Estrada parties alleged that they had entered into an agreement with Van Gundy to purchase the entirety of both Tract 1 and Tract 2 and that they had not realized until 2010 that Van Gundy had deeded them only the southern half of Tract 2 and that Van Gundy was not the record title owner of the Disputed Property. They asserted that they first entered the Disputed

4

Property on March 25, 2002 "and have held the land in peaceable and adverse possession from that date until the present date, claiming under an Earnest Money Contract, the sale of which closed on March 8, 2002." The Estrada parties alleged that, for more than nine years, they had "cultivated, used, and enjoyed" the Disputed Property and had "timely paid applicable taxes" on that property. They further alleged that their predecessor in interest, Van Gundy, had owned and had "full possession" of Tract 2 and had paid taxes on it for eighteen years. Thus, they argued that they could establish ownership of the full title to the Disputed Property by adverse possession.

At trial, the Estrada parties testified that, once they bought the property, they cut down nearly all of the trees on Tract 2 and mowed the property, which had previously been wooded and had high weeds. They also testified that they leveled the property using heavy equipment and erected two gates in front of the property fronting Hirsch Road. They also made drainage improvements at the front of the property, adjacent to Hirsch Road. They jointly maintained the property and kept it mowed. They also paid taxes on the entirety of Tract 2, as had the Van Gundys before them.

At the time the lawsuit was filed, Daner Cheshire was incarcerated in Cleveland, Texas. In February 2013, he signed a general warranty deed conveying "[t]hat one certain tract of land, being Tract Two (2) in Block Five (5) of Timber

5

Acres, a subdivision in Harris County, Texas, according to the map or plan thereof recorded in Volume 22, Page 13, of the Official Map Records of Harris County, Texas" to two of the Estrada parties, Jorge Gonzales and Maria Martinez. The Estrada parties then moved to dismiss Daner from the suit, stating that they had settled their dispute with him. The trial court granted the partial dismissal on March 22, 2013.

Lyndon Cheshire, on the other hand, filed an answer denying the Estrada parties' claims in February 2013. Lyndon contended that the Estrada parties did not have adequate title to the Disputed Property—the northern portion of Tract 2—and that they could not establish a right to title by adverse possession. Immediately prior to trial, Lyndon amended his answer to assert that there was a defect in the parties because he was not the owner of the Disputed Property. Rather, Lyndon argued that the Disputed Property still belonged to Cecil's estate, so the estate would have been the proper party.

At trial, the Estrada parties argued that, pursuant to the earnest money contract with Van Gundy, they were to have purchased the entirety of both Tract 1 and Tract 2. However, the 2002 deed from Van Gundy only conveyed Tract 1 and the southern portion of Tract 2. They argued that they did not realize until 2010 that the deed from Van Gundy did not convey the Disputed Property and that, in the meantime, they had cleared the land and made other improvements. The

6

Estrada parties thus sought to establish that they were entitled to title to the Disputed Property by virtue of adverse possession.

The Estrada parties further argued that ownership of the Disputed Property passed from Cecil to Mary by virtue of Cecil's will, which named Mary as his heir. They argued that upon Mary's death record title to the Disputed Property passed to Daner and Lyndon, who each owned a 50% interest in the Disputed Property because they were Mary's heirs. The Estrada parties admitted into evidence the deed executed by Daner in February 2013, and argued that they had a 50% interest in the Disputed Property by virtue of that deed and that Lyndon was the owner of the other 50% interest in the land. They argued that no one, including Lyndon, had made any claim on the Disputed Property in all the time since they had entered into their agreement with Van Gundy in 2002, that their possession of the land had been open, notorious, and hostile to Lyndon's interest, and that, therefore, regardless of title, they owned the entirety of Tract 2, including the Disputed Property.

Lyndon argued that the Disputed Property had remained part of Cecil's estate ever since Cecil's death and that both Mary and Van Gundy were aware that the title to the Disputed Property had never passed to anyone else. Lyndon asserted that Van Gundy knew she did not own the Disputed Property. He further argued that the deed executed by Daner in February 2013 was void because it did not adequately describe the Disputed Property—the northern portion of Tract 2.

At trial, Felipe Elguezabal testified on behalf of the Estrada parties. Elguezabal and his wife had originally joined the Estrada parties in their attempt to purchase Tract 1 and Tract 2 from Van Gundy, and they had divided the two tracts among the three couples. Elguezabal's allotted portion of land did not encompass any part of the Disputed Property, so he was not a party to the lawsuit. However, he testified that he and the Estrada parties cut down ninety percent of the trees, including those on Tract 2, and mowed the property. He also stated that they erected two gates in front of the property and made drainage improvements along Hirsch Road. Mercedes Van Gundy testified by deposition that when she owned the property, from 1984 until 2002, there was a fence around both Tract 1 and Tract 2.

The Estrada parties also provided evidence that ever since they had purchased the land from Van Gundy in 2002, they had paid taxes on the entirety of Tract 2, including the Disputed Property. They introduced into evidence a "delinquent tax statement" for "Lot 2, Block 5, Timber Acres, Section II," and Elguezabal testified that the Estrada parties and Van Gundy paid the delinquent taxes at the time they closed on the sale of Tract 1 and the southern part of Tract 2. The Estrada parties also admitted tax receipts for the time period that they had owned the property showing that they had paid the taxes and describing the property as "Lots 1 and 2, block 5."

8

Elguezabal further testified that, after the Estrada parties filed their lawsuit, Daner Cheshire deeded the Disputed Property to Jorge Gonzales and Maria Martinez. The Estrada parties offered the 2013 deed signed by Daner into evidence.

Lyndon's testimony, however, was inconsistent with the testimony offered by Elguezabal and Van Gundy. Lyndon testified that one of the tenants who had leased the land from Cecil had put a fence "across the front of the property." He further stated that there was a fence on one side of the property that had been erected by the neighboring property owner, but no other fence had ever been erected on any part of Tract 2. Lyndon testified that there was no fence on the Disputed Property at the time of trial and that Elguezabal's testimony that there was a fence was "incorrect." Lyndon stated that there were no buildings on the Disputed Property and that it did not appear to him that the Disputed Property had been mowed or cared for because "[i]t's the same 4-foot tall weeds and tires and a 55-gallon barrel dumped on the property" that had been on the Disputed Property for his recent memory. Lyndon provided pictures of the property that he testified represented the Disputed Property as it looked a week before trial, showing the tall weeds and trash.

Regarding Cecil's estate, Lyndon testified that, as far as he was aware, the estate was still open. He testified that his mother, Mary, was the executor of

Cecil's estate, but she became incapacitated and "never finished the estate; and the attorney that was handling her did not do anything to that estate, left it right where it was." Lyndon testified that no property had been awarded as a result of the probate of Cecil's estate. Lyndon did not claim that he himself had ever exercised dominion over the Disputed Property, nor did he produce any evidence that he had exercised possession of any part of it. He also disclaimed ownership and contended the Disputed Property was still owned by Cecil's estate.

Cecil's will, in which he left all of his estate to Mary, was admitted into evidence. The trial court also admitted into evidence a decree admitting Cecil's will to probate in Harris County Probate Court Number 1 and naming Mary as the independent executrix of the will. The record contained an inventory of Mary's estate at the time she was declared incapacitated. The Disputed Property was not mentioned in that inventory. The record also contained a final judgment from the probate of Mary's estate, stating that Daner and Lyndon "are the only heirs of Mary Lucille Genaro Cheshire and are each entitled to a one-half interest in her estate."

The trial court's judgment denied the Estrada parties' claim to "clear title and undisputed ownership" of the Disputed Property. It ordered that Daner and Lyndon Cheshire "are the rightful and legal owners of [the Disputed Property] and

are therefore entitled to immediate exclusive use, possession and enjoyment of the same."

The trial court signed findings of fact and conclusions of law. The trial court found that Cecil Cheshire obtained the title to the Disputed Property from the Nettles in 1965 and that the property "was included in his estate at the time of his death" in 1983; and it found that the "probate matter, Docket No. 180,177, remain[s] open at this time." In addition, the trial court found:

> 4. Mary L. Cheshire was the executrix of [Cecil Cheshire's] estate until her removal. There is no executor to the Estate of Cecil R. Cheshire at this time and no applications are pending. There are debts against the estate that have not been paid.

It concluded, in conclusion of law number five, that "Mrs. Mary L. Cheshire was never the owner of the [Disputed Property]. She never conveyed said land."

The trial court found that Mary Cheshire sold the southern portion of Tract 2 to Van Gundy, who then sold it to the Estrada parties. However, the trial court found:

> 7. The [Disputed Property] was NOT included in [the sale to the Estrada parties]. ONLY the southern portion of Tract 2 in Block 5 was included in the Van Gundy sale to Plaintiffs. In fact, the northern portion was specifically excluded from the Van Gundy/Plaintiffs transaction. . . .
> . . .
> 10. The [Disputed Property] was improperly included in the legal description in the Earnest Money Agreement between Plaintiffs and Mrs. Van Gundy.

11

. . .

12.     Mary L. Cheshire and Mercedes Van Gundy were aware that the northern portion of Tract 2, Block 5 of the subject property as set forth above had not been conveyed in any deeds since Mr. Cheshire bought the land on April 24, 1965.

. . .

15.     Mrs. Van Gundy had not purchased the subject property from Mrs. Cheshire and therefore could not have conveyed said property. Mrs. Van Gundy had never owned the property.

The trial court recognized that Daner did not participate in the trial, and it found that he had signed a deed regarding Tract 2. However, the trial court found:

8a.     The Deed signed by Daner Cheshire is, however, void, because neither he nor his brother own[s] the [Disputed Property]. The [Disputed Property] remains in the Estate of Cecil R. Cheshire.

The trial court further concluded, in conclusion of law number six, that "[t]he deed signed by Daner Cheshire is void because of an incomplete description of the property."

Regarding the Estrada parties' adverse possession claim, the trial court found:

13.     The subject land had not been cultivated by Plaintiffs. The subject land had not been mowed regularly. The subject land has been used as a dump for tires and other litter. Culverts and a gate are on the easement of Hirsch Road. No stationary buildings have been built on the property. No wells have been drilled on the property. No electricity has been brought onto the property.

12

The trial court concluded, in its conclusion of law number seven, that the Estrada parties "failed to prove adverse possession and all relief requested should be DENIED."

The Estrada parties moved for a new trial, which was overruled by operation of law. This appeal followed.

## Legal and Factual Sufficiency of the Evidence Supporting Title

The Estrada parties bring thirteen issues challenging the legal and factual sufficiency of the evidence to support the trial court's findings of fact and conclusions of law. They challenge the trial court's judgment denying their claim to clear title and undisputed ownership of the Disputed Property on the ground that they hold title to the property by virtue of their 2002 transaction with Van Gundy or by virtue of Daner's 2013 deed. They argue that the evidence is legally insufficient to support the trial court's findings of fact to the contrary and that the trial court's conclusions of law and judgment are legally incorrect. Specifically, the Estrada parties challenge the trial court's findings regarding the probate of Cecil's estate and its findings that Mary Cheshire never owned the Disputed Property and never transferred it to Van Gundy or to her sons Daner and Lyndon. They argue that they established that Mary inherited the Disputed Property from Cecil and that Daner and Lyndon inherited it from Mary. They also argue that the trial court erred in finding (1) that the Disputed Property was not included in the

13

sale from Van Gundy to them, (2) that the Disputed Property was improperly included in the earnest money contract, (3) that Mary and Van Gundy both knew the Disputed Property had not been conveyed by any deed since Cecil had bought the land in 1965, and (4) that Van Gundy did not own the Disputed Property and thus could not have conveyed it to the Estrada parties.

## A.     Standard of Review of Legal and Factual Sufficiency

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). "The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *Id.* at 794; *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). If we determine that a conclusion of law is erroneous but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *BMC Software*, 83 S.W.3d at 794; *HTS Servs.*, 190 S.W.3d at 111; *see also City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) ("We may review conclusions of law to determine their correctness. But we will not reverse an erroneous conclusion [of law] if the trial court rendered the proper judgment.").

14

In a bench trial, the trial court's findings of fact have the same weight as a jury verdict, and we review the legal and factual sufficiency of the evidence to support the findings using the same standard as when we review a jury's verdict. *BMC Software*, 83 S.W.3d at 794; *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). When challenged, a trial court's findings of fact are not conclusive if there is a complete reporter's record on appeal.[3] *BMC Software*, 83 S.W.3d at 794; *Daniel*, 190 S.W.3d at 184.

Legal sufficiency of the evidence is a question of law, not of fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When conducting a legal sufficiency review, we credit favorable evidence if a reasonable fact-finder could do so and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 827; *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We consider the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support the finding. *City of Keller*, 168 S.W.3d at 822. "[I]n every circumstance in which

---

[3] Lyndon argues in passing that "because the entire record was not brought forward—the deposition testimony of Ms. Van Gundy and exhibits offered at trial [are] missing—the judgment must be affirmed." However, the portions of the deposition testimony upon which the Estrada parties relied, both at trial and on appeal, were read into the record at trial. Furthermore, the deposition transcript and exhibits are included in the clerk's record on appeal. Thus, we reject Lyndon's argument that the judgment must be affirmed because the deposition and its exhibits were not included in the record.

reasonable jurors could resolve conflicting evidence either way, reviewing courts must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in their legal sufficiency review." *Id.* at 821. However, we must sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) that a vital fact is completely absent; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is not more than a scintilla; or (4) that the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810. An issue is established as a matter of law if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See id.* at 816. An appellate court conducting a legal-sufficiency review cannot disregard undisputed evidence that allows only one logical inference from which, by definition, reasonable jurors could reach only one conclusion. *City of Keller*, 168 S.W.3d at 815.

In a factual sufficiency review, we consider and weigh all of the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In a bench trial, the trial court acts as the fact-finder and is the sole judge of the credibility of the witnesses. *HTS*

16

*Servs.*, 190 S.W.3d at 111; *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) ("It is a familiar principle that in conducting a factual sufficiency review, a court must not merely substitute its judgment for that of the [fact-finder].").  The fact-finder may choose to believe one witness over another. *Figueroa v. Davis*, 318 S.W.3d 53, 59 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

**B.     Trespass to Try Title**

*1.     Standard of Review*

Any suit that adjudicates real property rights is a trespass to try title suit. *See* TEX. PROP. CODE ANN. § 22.001(a) (Vernon 2014) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 755 (Tex. 2003) (rival claims to title or right of possession may be adjudicated in trespass to try title action); *Hill v. Preston*, 34 S.W.2d 780, 787 (Tex. 1931) ("The remedy of trespass to try title is given in all cases where the right of title or interest and possession of land may be involved."); *Aspenwood v. Coinmach*, 349 S.W.3d 621, 634–35 (Tex. App.—Houston [1st Dist.] 2011), *aff'd in part, rev'd in part on other grounds*, 417 S.W.3d 909 (Tex. 2013); *Merit Mgmt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 643 (Tex. App.—Austin 2008, no pet.) ("A suit 'for the recovery of land' is a suit that determines title.").

Texas Property Code Chapter 22 governs trespass to try title suits, which are used to determine "title to lands, tenements, or other real property." TEX. PROP. CODE ANN. §§ 22.001–.045 (Vernon 2014); *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied). "[I]f the resolution of a title dispute is necessarily intertwined with the issue of possession, so that the right of possession depends upon it, possession may not be adjudicated without first determining title." *Aspenwood*, 349 S.W.3d at 635; *Dormady v. Dinero Land & Cattle Co.*, 61 S.W.3d 555, 557 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.); *Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.); *Haith v. Drake*, 596 S.W.2d 194, 196 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). "To recover in a trespass to try title action, the plaintiff must recover on the strength of his own title," not on the weakness of another's title. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994); *Aspenwood*, 349 S.W.3d at 636.

Accordingly, this Court is tasked with determining where title to the Disputed Property lies.

### 2. Legal Sufficiency of the Trial Court's Findings and Conclusions Regarding Title to the Disputed Property

The undisputed facts show that Cecil Cheshire owned the Disputed Property prior to his death in 1983; he left it to his wife Mary in his will, which she, as executor of Cecil's estate, had admitted to probate in 1984; Mary conveyed the

18

southern part of Tract 2 to the Van Gundys by general warranty deed, but the Disputed Property, consisting of the northern part of Tract 2, was not included in this conveyance; in March 2002, Mercedes Van Gundy conveyed to the Estrada parties all of the interest she owned in Tract 2; in 2010, the Estrada parties discovered the defect in title; in 2012, the Estrada parties brought this suit to clear title; in 2013, the Estrada parties settled their dispute over the northern part of Tract 2 with Daner Cheshire, one of Mary's two heirs, acquired a deed conveying his interest in the property, and dismissed him from this suit; and Lyndon Cheshire, Mary's other heir, who remains in the suit, claims that title to the Disputed Property still lies in Cecil's estate.

Under the Texas Probate Code, "if a person dies leaving a lawful will [. . . ] all of the person's estate that is devised by the will vests immediately in the devisees" and "all of the person's estate that is not devised by the will vests immediately in the person's heirs at law." TEX. ESTATES CODE ANN. § 101.001(a)(1), (a)(3) (Vernon 2014) (formerly TEX. PROBATE CODE § 37);[4] *see Jones v. Gilliam*, 199 S.W. 694, 696 (Tex. Civ. App. 1917), *aff'd*, 212 S.W. 930 (Tex. 1919) (holding that title to land vests in decedent's heirs, not in his administrator). The Code further provides that, upon completion of the hearing of an application for probate of a will, the court shall admit the will to probate if it is

---

[4] Statues in force at the time of death govern the disposition of the estate. *Dickson v. Simpson*, 807 S.W.2d 726, 727 (Tex. 1991).

satisfied that the will should be admitted.  TEX. ESTATES CODE ANN. § 256.201 (Vernon 2014) (formerly TEX. PROBATE CODE § 89).  Certified copies of the will and the order, or the record of the will and the order, and the record of testimony, may be recorded in other counties and may be entered into evidence like the original in a trial of the same matter in any other court.  *Id.*; *see Clark v. Barr*, 239 S.W.2d 114, 115–16 (Tex. Civ. App.—Fort Worth 1951, no writ) (in trespass to try title action, where it was shown that last will of deceased devising all of his property to defendant was admitted to probate and no appeal from order was taken, there was no issue of disputed fact, and issue as to ownership of property became one solely of law).  Any error in failing to incorporate a will in a judgment establishing the same is not of such materiality as to warrant a reversal where the will is made an exhibit, admitted to probate, and established.  *Glover v. Coit*, 81 S.W. 136, 139 (Tex. Civ. App. 1904).

Here, Cecil's will was admitted to probate in 1984, and the will and the order admitting the will to probate were filed in the Harris County Real Property Records and were entered into evidence in this suit.  Under Cecil's will, title to the northern portion of Tract 2, the Disputed Property, passed to his wife, Mary, upon Cecil's death as part of his estate.  As Cecil's estate was entirely passed to Mary by his will, the estate does not have an ownership interest in the Disputed Property.  The Estrada parties acknowledge that the deed from Mary Cheshire to the Van

Gundys and the deed they obtained from Van Gundy did not convey the Disputed Property, and the deed filed in the Harris County Map Records bears them out. Title to the Disputed Property, therefore, did not pass to the Estrada parties via the deed.

In 2005, Mary Cheshire's will was admitted to probate following her death, and the judgment in that probate proceeding was likewise filed in the Harris County records. Mary's will left her property to her heirs, Lyndon and Daner Cheshire. Thus, as a matter of law, record title to the Disputed Property, still owned by Mary at the time of her death, passed to Lyndon and Daner. The trial court's findings and conclusions that Mary Cheshire never owned the Disputed Property, that neither Lyndon nor Daner owned the Disputed Property, and that the Disputed Property remains in Cecil Cheshire's estate must be rejected. *See City of Keller*, 168 S.W.3d at 810 (reviewing court must uphold legal sufficiency challenge when court is barred by rules of law or evidence from giving weight to only evidence offered to prove vital fact).

We turn, therefore, to whether the Estrada parties became owners of the Disputed Property by adverse possession and are, therefore, entitled to transfer of the title to them.

### 3. *Sufficiency of Trial Court's Findings and Conclusions Regarding Adverse Possession*

The Estrada parties challenge the trial court's legal conclusion that they do not own the Disputed Property by adverse possession. They also challenge the legal and factual sufficiency of the trial court's findings that the Disputed Property had not been cultivated or mowed regularly, that it had been used as a dump for tires and other litter, that the culverts and gate were located in an easement, and that no stationary buildings, wells, or electricity had been added to the Disputed Property.

Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutorily required period. TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (Vernon 2002); *Allen & Martha Lewis Revocable Trust v. Perales*, No. 01-09-00140-CV, 2010 WL 3212125, at *5 (Tex. App.—Houston [1st Dist.] Aug. 12, 2010, no pet) (mem. op.); *Masonic Bldg. Ass'n v. McWhorter*, 177 S.W.3d 465, 472 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The law of adverse possession is well established:

> It is well settled, that, where a party relies upon naked possession alone as the foundation for his adverse claim, it must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery.

*Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990).

Adverse possession is governed by Chapter 16 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021–16.032 (Vernon 2002). Section 16.030(a) provides, "If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims." *Id.* § 16.030(a). The Estrada parties asserted arguments under the three-year, ten-year, and twenty-five-year adverse possession statutes.

Section 16.024 provides a three-year statute of limitations for adverse possession under certain circumstances:

> A person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues.

*Id.* § 16.024.

Section 16.026 provides a ten-year statute of limitations for adverse possession:

(a) A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

(b) Without a title instrument, peaceable and adverse possession is limited in this section to 160 acres, including improvements, unless the number of acres actually enclosed exceeds 160. If the number of enclosed acres exceeds 160 acres, peaceable and adverse possession extends to the real property actually enclosed.

(c)     Peaceable possession of real property held under a duly registered deed or other memorandum of title that fixes the boundaries of the possessor's claim extends to the boundaries specified in the instrument.

*Id.* § 16.026.

Adverse possession requires proof of actual possession of the disputed real property that is open and notorious, peaceable, under a claim of right, adverse or hostile to the claim of the owner, and consistent and continuous for the duration of the statutory period. *Perales*, 2010 WL 3212125, at *6; *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213 (Tex. App.—Texarkana 2006, pet. denied) (citing *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 193–94 (Tex. 2003)); *Terrill v. Tuckness*, 985 S.W.2d 97, 107 (Tex. App.—San Antonio 1998, no pet.) (holding that to be adverse, possession must be "actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant"). Whether adverse possession has been established is ordinarily a question of fact. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985).

"The test for hostility is whether the acts performed by the claimant on the land and the use made of the land were of such a nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the property." *McWhorter*, 177 S.W.3d at 472. A claimant needs to show that

he acted in a way that visibly appropriated the disputed property in a manner that gave notice to any other person that he claimed a right in the property. *Perkins v. McGehee*, 133 S.W.3d 287, 291–92 (Tex. App.—Fort Worth 2004, no pet.) (citing *Parker v. McGinnes*, 842 S.W.2d 357, 360 (Tex. App.—Houston [1st Dist.] 1992, writ denied)).

"'Hostile' use does not require the intention to dispossess the rightful owner," or even knowledge that there is a rightful owner. *Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006); *Kazmir v. Benavides*, 288 S.W.3d 557, 564 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "But there must be an intention to claim the property as one's own to the exclusion of all others." *Tran*, 213 S.W.3d at 915; *Kazmir*, 288 S.W.3d at 564. "The belief that one is the rightful owner and has no competition for the ownership of the land is sufficient intention of a claim of right." *Kazmir*, 288 S.W.3d at 564 (citing *Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex. 1976) (finding legally sufficient evidence of hostile intent necessary for adverse possession where claimants believed they were purchasing everything within fences around lot)); *cf. Tran*, 213 S.W.3d at 915 (landowner's sharing use of driveway, which she believed to be on her lot, but which was on adjacent owners' lot, with owners of adjacent lot, was not inconsistent with or hostile to adjacent owners' ownership, as required for adverse possession).

In addition, Texas has a twenty-five-year adverse possession statute. Section 16.029 of the Code provides that, in a suit involving title to real property, "it is prima facie evidence the title to the property has passed from the person holding apparent record title to an opposing party if it is shown that . . . for one or more years during the 25 years preceding the filing of the suit the person holding apparent record title to the property did not exercise dominion over or pay taxes on the property," and, "during that time, the opposing parties and those whose estate they own have openly exercised dominion over and have asserted a claim to the land and have paid taxes on it annually before becoming delinquent for as long as 25 years." TEX. CIV. PRAC. & REM. CODE ANN. § 16.029. Establishment of openly exercised dominion requires that there must be some showing of physical conduct on the land itself. *Purnell v. Gulihur*, 339 S.W.2d 86, 91 (Tex. Civ. App.—El Paso 1960, writ ref'd n.r.e.).

Texas law thus recognizes, as the public policy of the state, a rebuttable presumption of a deed in favor of a person claiming adversely when the land has been in continuous possession of persons claiming adversely and paying taxes on it for more than twenty-five years. *Duke v. Houston Oil Co.*, 128 S.W.2d 480, 485 (Tex. Civ. App.—Beaumont 1939, writ dism'd, judgm't cor.). "Although possession is not an indispensable prerequisite to the presumption of a deed" in favor of one who has long been in continuous possession of land, claiming it

26

adversely, and paying taxes on it, "the claim of title must be made in some tangible form calculated to bring notice to those who are adversely affected [by it], so as to create a presumption of acquiescence in the claim by the adverse parties." *Id.* However, although payment of taxes is "competent evidence" of adverse possession, merely paying taxes on the property is "insufficient to establish adverse possession as a matter of law under the ten year statute." *Rhodes*, 802 S.W.2d at 646.

Where there is privity of estate between a predecessor and plaintiffs who claim land by adverse possession, the period of possession of the current possessor may be tacked to that of the prior possessor to satisfy the full ten or twenty-five year period required for adverse possession. *Sterling v. Tarvin*, 456 S.W.2d 529, 534 (Tex. Civ. App.—Fort Worth 1970, writ ref'd n.r.e.) (holding that, where both tract to which predecessor had record title and disputed tract were enclosed by single fence even though deed from predecessor to plaintiffs described only tract of record and possession of both tracts was delivered by predecessor to plaintiffs who continued to adversely possess disputed tract, there was privity of estate between predecessor and plaintiffs, who were entitled to tack their period of adverse possession onto that of predecessor to get full statutory ten-year period). To tack periods of possession of two or more persons to establish title by adverse possession, it must be shown that (1) possession and claim of a claimant's

predecessors met all requirements of the limitation statute; (2) possession and claim of a claimant and those of his predecessors were continuous without interruption; and (3) an earlier occupant's possession and claim were passed or transferred to latter occupant by agreement, gift, devise, or inheritance. *Dale v. Stringer*, 570 S.W.2d 414, 417 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.).

The Estrada parties argued and submitted evidence that their possession of the Disputed Property was open and notorious. They produced evidence that they had purchased the land from the Van Gundys by earnest money contract and a purchase and sale agreement that included the Disputed Property and had paid taxes on the entire tract for more than ten years. They testified that they believed they had purchased the entirety of Tract 2 and only discovered their error when they sought a building permit in 2010. The Estrada parties testified that the land— including the Disputed Property—was wooded when they purchased it in 2002 and that they used heavy equipment to clear and level the property and had since kept it cleared. They also introduced photographic evidence of the property as it looked at the time of trial, showing that it was clean and had been recently mowed, with some trees to the back of the property. And they submitted evidence that they had erected two gates in front of the property facing Hirsch Road and had made drainage improvements at the front of the property adjacent to Hirsch Road. The

Estrada parties entered into an earnest money contract and sale contract for the land and then paid the applicable taxes on the land, including the Disputed Property.

Lyndon offered testimony that appeared to contradict some of the Estrada parties' evidence. The trial court agreed with him and found, finding of fact 13, that the Disputed Property had not been cultivated, "had not been mowed regularly" and had been "used as a dump for tires and other litter," and no buildings, wells, electricity had been brought onto the Disputed Property. Lyndon testified that, rather than being cleared, the grass was overgrown on the property, the gates and pipes were located on the easement of the property, and there were no other improvements to the land. He submitted photographs of an overgrown property with trash and debris on it.

However, the Estrada parties conclusively disproved Lyndon's claims. Jorge Gonzales, one of the Estrada parties, testified in rebuttal that Lyndon's photographs were not photographs of the Disputed Property, they were photographs of the property next door to the Disputed Property. Overhead photographs were admitted into evidence that supported Gonzales' testimony regarding the condition and location of the Disputed Property. In addition, the Estrada parties introduced photographs showing that Tracts 1 and 2 faced a road identified as Hirsch Road and were distinct from the neighboring properties. We

conclude, therefore, that no reasonable person, viewing all of the evidence, could have credited Lyndon's testimony regarding the condition of the Disputed Property. *See City of Keller*, 168 S.W.3d at 816, 822.

Moreover, Lyndon did not contest that trees on the Disputed Property were cleared when the Estrada parties leveled the property in 2002. Nor did he contest that there was a gate and fence at the entrance of the Disputed Property or that the Estrada parties had made drainage improvements. Lyndon testified that Elguezabal's testimony that there was currently a fence on the Disputed Property was incorrect, but he did not contradict Mercedes Van Gundy's testimony that there was a fence around the entire property at the time she owned it.

Reviewing the evidence in the light most favorable to the verdict, we conclude that Lyndon produced no more than a scintilla of evidence to rebut the Estrada parties' claims to have adversely possessed the Disputed Property. The fact that some improvements may have been in the utility easement in front of the property is irrelevant to the determination of whether they were within the metes and bounds description of the property that the Estrada parties claim to have adversely possessed; the test is the extent of the property over which dominion is openly and hostilely asserted, not the existence of an easement on that property. *See Kazmir*, 288 S.W.3d at 564–65 ("Belief that one is the rightful owner and has no competition for the ownership of the land at issue is sufficient intention of claim

30

of right," and visible appropriation evidences such claim); *see also Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 807 (Tex. App.—San Antonio 2014, pet. denied) (adverse possession of easement subject to same test as ownership of dominant estate).

We further conclude that the Estrada parties established adverse possession of the Disputed Property under the ten-year statute. The Estrada parties entered into an earnest money contract and sale contract for the land and then paid the applicable taxes on the land, including the Disputed Property. They visibly appropriated the Disputed Property in a manner that was plainly adverse to the Cheshires' claim of title and that gave notice to any other person that they claimed a right in the property by mowing and clearing trees and seeking building permits. Thus, we conclude that the Estrada parties adversely possessed under the ten-year statute that part of Tract 2 that was not deeded to them in their purchase of the property from the Van Gundys. *See Perkins*, 133 S.W.3d at 291–92 (citing *Parker*, 842 S.W.2d at 360).

We also conclude that the Estrada parties established their right to adverse possession under the twenty-five-year statute. The undisputed evidence establishes that the Van Gundys, like the Estrada parties after them, paid taxes on the entire property—including the Disputed Property—beginning in 1984 until they sold the southern portion of Tract 2 to the Estrada parties. Mercedes Van Gundy's

undisputed testimony was that the entire property, including the Disputed Property, was fenced during the time she owned it, and no one other than the Van Gundys made any claim of possession or attempted to exercise dominion over any part of the land during the time they owned it. In 2002, Mercedes Van Gundy sold Tract 2 to the Estrada parties under a written earnest money contract and contract of purchase and sale. The plain language of this document included the Disputed Property, and the Estrada parties likewise testified that they believed it included the Disputed Property.

From 2002, when they bought Tract 2 from Van Gundy, until the time they brought this suit to try title in 2012, the Estrada parties exercised dominion over the land and paid taxes on it as their predecessors, the Van Gundys, had done. The Estrada parties cleared the land and discovered the defect in title only when they sought a building permit, after which they brought this suit. There is no evidence to the contrary. Thus, when the Estrada parties' ten-year period of possession prior to the filing of suit is tacked on to the Van Gundys' eighteen-year period of possession, the evidence is sufficient to establish title to the Disputed Property in the Estrada parties under the twenty-five-year statute. *See Duke*, 128 S.W.2d at 485 (adverse possession may be established by party claiming adversely and paying taxes on land, when claim of title is made in tangible form calculated to bring notice to those adversely affected by it); *Sterling*, 465 S.W.2d at 534–35.

For the foregoing reasons, we conclude, as a matter of law, that the trial court's findings and conclusions that the Estrada parties did not establish their adverse possession claim are supported by legally insufficient evidence and that the evidence affirmatively establishes the Estrada parties' adverse possession claim. *See City of Keller*, 168 S.W.3d at 816, 821 (holding that we must sustain legal sufficiency or "no-evidence" challenge if record shows that evidence conclusively establishes opposite of vital fact, and matter is established as matter of law if reasonable people could not differ as to conclusion to be drawn from evidence); *see also* TEX. CIV. PRAC. & REM. CODE § 16.026; *Tran*, 213 S.W.3d at 914; *Kazmir*, 288 S.W.3d at 569.

We hold, therefore, that the Estrada parties have established their claim to the Disputed Property by adverse possession as a matter of law. Accordinly, we order that title to the Disputed Property be transferred to the Estrada parties in accordance with their respective interests therein as established by their mutual agreements.

## Other Issues

In their final issues, the Estrada parties argue that the trial court erred in awarding title and possession of the Disputed Property to Daner and Lyndon Cheshire because neither of them filed any pleadings asking for such relief. The

Estrada parties argue that the trial court had no jurisdiction to make such a finding or to grant title and possession of the Disputed Property to either Daner or Lyndon.

We need not reach these issues because we have already held that the Estrada parties have established title to the Disputed Property by adverse possession.

## Conclusion

We reverse the trial court's judgment. We render judgment deleting the portion the trial court's judgment awarding the property at issue to appellees Daner Lee Cheshire, Lyndon Charles Cheshire and further render judgment that appellants Hector Estrada, Iselda Estrada, Jorge Gonzales, and Maria Martinez have record title to the northern portion of Tract 2, Block 5 in the Timber Acres Subdivision in Harris County, Texas. We order that title be transferred to the Estrada parties according to their respective interests therein.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.