**Affirmed; Opinion Filed July 30, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00457-CV

### MOHAMED AHMED, Appellant
### V.
### HINGA MBOGO, Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-06400**

# MEMORANDUM OPINION
Before Justices Lang-Miers, Myers, and Boatright
Opinion by Justice Myers

This is an appeal from a final judgment in favor of appellee Hinga Mbogo following motions for summary judgment and a four-day jury trial. In twenty-three issues, appellant Mohamed Ahmed contests the trial court's denial of his motion for summary judgment; the legal and factual sufficiency of the evidence supporting the jury's verdict; the trial court's refusal of appellant's proposed jury questions; and the granting of appellee's motion for partial summary judgment. We affirm.

## BACKGROUND AND PROCEDURAL HISTORY

Appellee Hinga Mbogo is an automotive mechanic. In the 1980s, he moved to Dallas and began working as a certified auto mechanic. In 1986, appellee leased a portion of a property located at the 3500 block of Ross Avenue, in Dallas, Texas, for the purpose of owning and operating an automotive repair business, Universal Motors. With the help of two other mechanics,

Martin Nganga and Charles Kaguma, appellee operated Universal Motors on the property until June of 1991, at which point the property's owner approached appellee about buying the property —three lots in city block 513 of the City of Dallas, Texas, located at 3512, 3516, and 3520 Ross Avenue—for $178,000, with an up-front $30,000 down payment. Appellee wanted to purchase the property but neither he nor his two mechanics had sufficient funds to make the down payment. Appellee learned, however, that a former auto repair customer, appellant Mohamed Ahmed, who was not a mechanic, might be interested in contributing the money for the down payment in exchange for an ownership interest in the business.

The parties' discussions ultimately resulted in the purchase of the property and the formation of a new business entity, "Universal Auto Repair, Inc.," that operated a new automotive repair business in place of the one appellee previously operated. They signed a ten-year note for $178,080; appellant contributed the $30,000 down payment for the property's purchase. Appellee contributed the automotive repair business he already operated on the property, along with its tools and equipment. Three of the four persons involved—appellee, Nganga, and Kaguma—testified that their understanding of the parties' oral agreement was that for their interest in the business and property to vest, they had to work full time for the business for ten years, and anyone who left the business in the first ten years of operation forfeited his ownership interest. As appellee described it: "If anybody left before the ten-year note matured, or before ten years, he would lose his . . . share in the company. He would lose everything. If he walked away, that was it." Appellant confirmed the existence of the ten-year agreement but testified it did not apply to him.

On June 21, 1991, appellant completed and submitted to the Texas Secretary of State articles of incorporation naming himself, appellee, Kaguma, and Nganga as the initial board of directors of Universal Auto Repair, Inc. The ownership interest was to be divided four ways, with each person getting a 25 percent share, and each of the four owners' interest included an ownership

interest in the property. Appellee testified the business agreement was between himself, appellant, Kaguma, and Nganga, but for tax reasons his sister Mary Mbogo, who lived in Miami, was named on the warranty deed instead of appellee. From 1997 until 2014, Mary Mbogo was listed as a co-tenant on the warranty deed for the property alongside appellant, Kaguma, and Nganga. On December 23, 2014, she executed a general warranty deed transferring her interest to appellee. The evidence at trial showed she was not a party to the original agreement, she claimed no ownership interest in the property, and that she was a "stand in" for appellee and held title on his behalf.

After Universal Auto Repair was up and running, the parties agreed that appellant, appellee, Nganga, and Kaguma would each receive $350 a week in salary when funds were available, and any money remaining was to be divided between them. Appellee testified that the first few years of the business were "okay," but the parties soon started fighting among themselves because "[t]here was not enough money." At times, after the business expenses were paid, including the note for the property, there were not enough funds to pay everyone their salaries. Kaguma testified that the agreed $350 salary was a "[h]uge pay cut" for him, and that "there were times we went without."

Sometime in 1994, Charles Kaguma decided to leave the business and relinquished his co-ownership interest in the business and the property, telling the jury he felt he had no choice because "[i]t became impossible for me to survive on $350 a week when it was available." The following year, in 1995, Martin Nganga also relinquished his interest. For the next two years, appellant and appellee operated the business alone, with some assistance from non-mechanic "helpers." Appellee testified that it was difficult to operate the business without experienced mechanics to help him and that he was working long hours, sometimes staying until 10:00 p.m. at night and working seven days a week. To supplement the business's income, appellant and appellee decided

to purchase a tow truck in 1995.

In late May or early June of 1997, not long after securing a towing contract with AAA, appellant quit Universal Auto Repair, closing the business's checking account (after withdrawing the funds on deposit) and starting his own towing business. Appellant also took the tow truck, which he claimed he owned. Appellee continued paying the expenses for the property's upkeep, the mortgage payments, the tax assessments, and the insurance. Somewhere around a $95,909 principal balance remained on the property when appellant left the business.

In October of 1997, after a few months of operating Universal Auto Repair alone, appellee formed a new, solely-owned, automotive repair business called Hinga's Automotive. Along with changing the store-front signage from Universal Auto Repair to "Hinga Auto Repair," appellee registered his company with the Texas Secretary of State as "Hinga's Automotive;" changed the business's uniforms to Hinga's Automotive from Universal Auto Repair; changed the locks; built an extension on the back of the building; and otherwise exercised control over the property. Appellee made these changes without appellant's authorization or consent. Appellee also obtained warranty deeds from Kaguma and Nganga in June of 1997 conveying their interest in the property to appellee.

In August of 2001, appellee received notice that the property's note was maturing. As he had been doing since appellant's departure from the business, appellee paid the remaining amounts due under the note and received, in December of 2001, both the property's deed and a release of the lender's lien.

After holding the property deed for almost fifteen years, appellee approached appellant about getting his name removed from the deed. Appellant indicated a willingness to help clear the cloud on the property's title if paid "the right price." According to appellee, he demanded $200,000. Unwilling to pay for what he believed he already owned, appellee filed the underlying

–4–

adverse possession lawsuit on June 3, 2015.

In his live pleading—the plaintiff's third amended petition—appellee asserted a claim for adverse possession against appellant, and alternative claims against him for breach of contract and for partition and contribution/accounting. Appellee based his claims on the fact that, among other things, appellee, his mechanics, and appellant had agreed to form, and to equally co-own, Universal Auto Repair; each co-owner's interest in Universal Auto Repair included an equal ownership share in the property; and any co-owner who quit Universal Auto Repair before the business's tenth anniversary automatically forfeited his interest in the business and the property to the remaining co-owners. Appellee further alleged that, upon quitting Universal Auto Repair in June of 1997, appellant automatically forfeited to appellee (the sole remaining co-owner) whatever interest he had in the property. Appellee also argued that even if appellant retained an interest in the property, appellee acquired that interest by adversely possessing the entire property in accordance with the ten-year limitations period in section 16.026 of the Texas Civil Practice and Remedies Code.

Appellant answered and counterclaimed. Appellant's live pleading—the defendant's third amended counterclaim—asserted counterclaims against appellee for fraud, statutory fraud, fraudulent inducement, breach of fiduciary duty, conspiracy, purchase money resulting trust, declaratory judgment, and an accounting. Appellant's live answer—the defendant's first amended answer—included three verified denials challenging appellee's standing and capacity to sue. It also included the affirmative defenses of estoppel, waiver, assumption of the risk, statute of frauds, statute of limitations, fraud, illegality, and unclean hands. Appellant's counterclaim argued that he, not appellee, owned 100 percent of the property, pointing out (among other things) that appellee's sister was the fourth co-owner of the property; she failed to contribute the agreed-to amount pledged for her co-equal interest; appellee's post-1997 possession of the property was not

adverse to appellant because, after appellant left the business, appellee just managed the property for appellant's benefit; and appellant was the only co-owner who made any contributions towards the property's purchase.

Before trial, appellee moved for partial no-evidence and traditional summary judgment on appellant's counterclaims and affirmative defenses. Appellee moved for no-evidence summary judgment on appellant's fraud, fraudulent inducement, statutory fraud, breach of fiduciary duty, and conspiracy counterclaims. He also moved for no-evidence summary judgment on appellant's estoppel, waiver, statute of frauds, fraud, and unclean hands affirmative defenses. He sought traditional summary judgment on appellant's breach of contract, fraud, statutory fraud, fraudulent inducement, declaratory judgment, breach of fiduciary duty, and conspiracy counterclaims, and his assumption of the risk and illegality affirmative defenses.

The trial court initially denied appellee's summary judgment motion, but later, after appellee filed a "motion for reconsideration and its amended no-evidence and traditional motion for partial summary judgment,"[1] the court granted partial summary judgment on appellant's "claims of fraud, fraudulent inducement, statutory fraud, breach of fiduciary duty, declaratory judgment and conspiracy," and his "affirmative defenses of assumption of the risk, estoppel, waiver, statute of frauds, fraud, unclean hands[,] and illegality." The trial court denied partial summary judgment as to appellant's claim for breach of contract because it found appellant had never asserted such a claim, and the court found and ordered that because the pleading deadline had passed and appellant had not asserted a breach of contract claim, appellant would not be allowed to amend his pleadings and assert such a claim.

---

[1] Appellee's reconsideration motion did not specifically move for summary judgment on appellant's affirmative defenses of estoppel, waiver, statute of frauds, unclean hands, or illegality, as appellee had done in his original summary judgment filing, but in his reconsideration motion appellee specifically incorporated the arguments in his previous motion by reference, stating that he "re-urges the arguments in its Original Motion (and Plaintiff incorporates herein, as if set forth in full, the briefing and attachments to the Original Motion) in an attempt to narrow the issues for trial as outlined below."

Appellant also moved for summary judgment on appellee's affirmative claims for relief on both traditional and no-evidence grounds. More specifically, appellant moved for no-evidence partial summary judgment on appellee's adverse possession claim, and for traditional summary judgment on appellee's adverse possession claim and the breach of contract and accounting claims. The trial court granted appellant's motion as to appellee's breach of contract action, but denied it as to appellee's adverse possession claim.

The adverse possession claim was submitted to a jury, which found that appellee peaceably and adversely possessed the Ross Avenue property for at least ten years before he filed suit on June 3, 2015.[2] Pursuant to the jury's verdict, the trial court entered a final judgment awarding appellee fee simple title to the entire property, and rendering judgment that appellant take nothing. This appeal followed.

**DISCUSSION**

**I. Denial of appellant's motion for summary judgment**

In his first issue, appellant argues the trial court erred in denying his summary judgment motion challenging appellee's adverse possession claim on both traditional and no-evidence grounds.

Texas law generally prohibits appellate review of a trial court's interlocutory order denying a party's motion for summary judgment. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007) (recognizing that the denial of summary judgment is normally not appealable); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) ("The general rule is that a denial of a summary judgment is not reviewable on appeal."). There are, however, two recognized exceptions to this rule: (1) when a statute expressly authorizes

---

[2] The jury also found that $120,000 was fair rental value of the property that should be paid to the owners of the property during the ten-year period appellee adversely possessed it, a finding that is not challenged on appeal.

an appeal of a denied summary judgment motion, *see, e.g.,* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5), (6), and (13), or (2) when both parties move for summary judgment on the same ground or grounds and the trial court grants one motion and denies the other. *See In the Interest of J.J.F.R.*, No. 04–15–00751–CV, 2016 WL 3944823, at *1 (Tex. App.—San Antonio July 20, 2016, no pet.) (mem. op.).

In this case, the parties did not file competing summary judgment motions on appellee's adverse possession claim; only appellant moved for summary judgment on that claim. When the trial court denied appellant's summary judgment motion on the adverse possession ground, the court did not contemporaneously (or subsequently) enter another order that, together with the complained-of summary judgment order, fully disposed of appellee's adverse possession claim. Resolving that claim was the province of the jury. And no statute authorizes an appeal from the denial of appellant's motion for summary judgment. Therefore, appellant may not appeal the trial court's order denying his motion for summary judgment. We overrule appellant's first issue.

## II. Legal sufficiency of the evidence

In his issues two, three, four, and five, appellant argues the evidence is legally insufficient to support the jury's finding of adverse possession as to appellant. More specifically, appellant contends the evidence is legally insufficient because a partnership purchased the Ross Avenue property and owned it; appellee had to adversely possess the property for twenty-five years and he did not do so; appellee's sister, Mary Mbogo, was a co-tenant and her name was listed in the deed along with appellant, Nganga, and Kaguma; appellant and appellee were not the only purported co-tenants listed on the property beginning on December 23, 2014, when Mary Mbogo executed the warranty deed transferring her interest in the property to appellee.

We will sustain a challenge to the legal sufficiency of the evidence if the record shows (1) a complete absence of a vital fact; (2) rules of law or evidence bar the court from giving weight to

the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; (4) or the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We consider the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *Id*. at 827. We do not substitute our judgment for that of the trier of fact, so long as the evidence falls within a zone of reasonable disagreement. *Id*. at 822.

In his second issue, appellant contends there is legally insufficient evidence to support the jury's finding—and the trial court's final judgment—that appellee adversely possessed the property against its rightful owner because a partnership purchased the property and appellee sued only appellant, not the partnership.

Unlike standing, which is jurisdictional, a challenge to a party's capacity to be sued can be waived. *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist*., 925 S.W.2d 659, 662 (Tex. 1996) (Nootsie waived any complaint about appraisal district's legal capacity because it failed to raise the issue through a verified pleading in the trial court); *Highland Credit Opportunities CDO, LP v. UBS AG*, 451 S.W.3d 508, 516 (Tex. App.—Dallas 2014, no pet.) ("Unlike jurisdiction, the assertion of a lack of capacity is procedural, and can be waived."). Although appellant filed three verified denials challenging appellee's standing and legal capacity to bring suit, he did not file a verified denial that appellee sued the wrong party. Texas Rule of Civil Procedure 93 provides in part that unless the truth of the matter appears of record, a pleading setting up the matter that a defendant is not liable in the capacity in which he has been sued must be verified by affidavit, and that a pleading asserting there is a defect of parties must be verified by affidavit. *See* TEX. R. CIV. P. 93(2), (4). "A party who fails to follow this requirement waives the right to complain about the matter on appeal." *Highland Credit*, 451 S.W.3d at 516. Because appellant failed to bring such a

verified denial, he waived the issue. *See* TEX. R. CIV. P. 93(2), (4); *Nootsie*, 925 S.W.2d at 662; *Highland Credit*, 451 S.W.3d at 516.

Appellant's third issue argues appellee had to, and did not, show that he adversely possessed the property for twenty-five years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.027. Appellant, however, did not raise the twenty-five year adverse possession statute below, nor does he support his contention that the statute applies in this case with appropriate citations to authorities and to the record. *See* TEX. R. APP. P. 38.1(i) (brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). If a party fails to advance a viable argument on appeal with citations to appropriate authorities and the record, we are not required to comb through the record and the applicable law to determine if any error occurred. *See, e.g., Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 270 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.); *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Ayati-Ghaffari v. J.P. Morgan Chase Bank*, No. 05–17–00482–CV, 2018 WL 1602528, at *1 (Tex. App.—Dallas Apr. 3, 2018, no pet.) (mem. op.). Accordingly, this argument has been waived.

In his fourth and fifth issues, appellant contends he and appellee were not the only purported co-tenants listed on the property as of December 23, 2014, when Mary Mbogo executed the warranty deed transferring her interest in the property to appellee; and that, as a result, appellee had to, and did not, establish he adversely possessed the property against Mary Mbogo for the requisite 10-year period.

As discussed elsewhere, the record shows that Mary Mbogo never claimed any ownership interest in the property, and that she held title on appellee's behalf because he was having tax problems. Furthermore, Mary Mbogo's act of executing a warranty deed to appellee *after* he had adversely possessed the property for the requisite 10-year period was, as a matter of law,

insufficient to defeat appellee's fee simple title. *See Santa Fe Energy Operating Partners, L.P. v. Carillo*, 948 S.W.2d 780, 786 (Tex. App.—San Antonio 1997, writ denied) (recognizing record title holder's quit claim deed executed after adverse possession claim matured could not defeat adverse possessor's title) (citing *Auchterlonie v. McBride*, 705 S.W.2d 183, 186 (Tex. App.—Houston [14th Dist.] 1985, no writ)); *see also Fuentes v. Garcia*, 696 S.W.2d 482, 485 (Tex. App.—San Antonio 1985, no writ) ("When the statutory period has run as here, title is full and absolute in the claimant and cannot be lost by subsequent oral statements that the claimant never intended to claim by limitations."). We overrule appellant's issues two, three, four, and five.

### III. Factual sufficiency of the evidence

In his sixth issue, appellant argues the evidence is factually insufficient to support the jury's adverse possession finding. He contends there is insufficient evidence to support both the "open and obvious" and "adverse and hostile" elements of appellee's adverse possession claim.

When evaluating the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutorily required period. TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1); *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990); *Estrada v. Cheshire*, 470 S.W.3d 109, 122 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Under Section 16.026 of the Civil Practice and Remedies Code, "[a] person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." TEX. CIV. PRAC. REM. CODE ANN. §

–11–

16.026(a).

"The test for hostility is whether the acts performed by the claimant on the land and the use made of the land were of such a nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the property." *Bernal v. Chavez*, 198 S.W.3d 15, 19 (Tex. App.—El Paso 2006, no pet.). A claimant needs to show he acted in a way that visibly appropriated the disputed property in a manner that gave notice to any other person that he claimed a right in the property. *Perkins v. McGehee*, 133 S.W.3d 287, 291–92 (Tex. App.—Fort Worth 2004, no pet.) (citing *Parker v. McGinnes*, 842 S.W.2d 357, 360 (Tex. App. —Houston [1st Dist.] 1992, writ denied)).

"'Hostile' use does not require an intention to dispossess the rightful owner," or even knowledge there is a rightful owner. *Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006); *Kazmir v. Benavides*, 288 S.W.3d 557, 564 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "But there must be an intention to claim the property as one's own to the exclusion of all others." *Tran*, 213 S.W.3d at 915; *Kazmir*, 288 S.W.3d at 564. The "[b]elief that one is the rightful owner and has no competition for the ownership of the land is sufficient intention of a claim of right." *Kazmir*, 288 S.W.3d at 564–65; *see Tran*, 213 S.W.3d at 915.

"A claimant shows exclusive intent when he or she makes use of the land as an ordinary person would." *KB Texas Instruments, LLC v. Spiller*, No. 01–16–00068–CV, 2017 WL 372164, at *6 (Tex. App.—Houston 1st Dist.], no pet.) (mem. op.). "The character and situation of the land, and the uses to which it is adapted, and may be and is actually put, must be considered in determining whether an occupation is exclusive or not." *Richards v. Smith*, 4 S.W. 571, 573 (Tex. 1887); *Kazmir*, 288 S.W.3d at 564–65. "When a person in possession of land is shown to have used and enjoyed it as an owner of land usually does, the natural inference is that possession was taken and held for such person as owner and that is, therefore, inconsistent with and hostile to the

–12–

claim of another." *Kinder Morgan North Texas Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 440 (Tex. App.—Texarkana 2006).

Beginning with the "open and obvious" element of appellee's adverse possession claim, the evidence shows that shortly after appellant quit the business, appellee formed a new automotive repair business; changed the locks; painted the name of his new business over the old business's name; changed the employees' uniforms to reflect the new business's name; built an extension on the back of the building. These changes were visible to the public. Appellant admitted at trial that the foregoing changes were done without his agreement or consent, and that he visited the property three or four times after appellee made these changes. We conclude the evidence in favor of the jury's finding for appellee on the "open and obvious" element of his adverse possession claim is not so weak as to be clearly wrong and unjust. *See, e.g., Baugh v. Capps*, No. 10–09–00111–CV, 2010 WL 730369, at *3 (Tex. App.—Waco Mar. 3, 2010, no pet.) (mem. op.) (recognizing that notice of adverse possession can be inferred, or there can be constructive notice) (citing *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 194 (Tex. 2003)); *see also Cain*, 709 S.W.2d at 176.

Regarding appellant's factual sufficiency challenge to the jury's "adverse and hostile" finding in appellee's favor, appellant argues there is no testimony that appellee acted to restrict appellant's entry onto the property, an assertion that is undermined by evidence (for example) that appellee changed the locks after appellant's departure from the business. Appellant also argues that appellee's possession of the property was not adverse and hostile, but rather that it was part of a bargained-for exchange whereby appellee offered to pay the mortgage, taxes, and run the business in return for appellant's agreement not to re-let or sell the property.

Yet, even if one assumes appellee's possession of the property started out permissively, the evidence shows appellee satisfied the adverse and hostile elements of his adverse possession

–13–

claim through his "open, notorious, exclusive, and inconsistent" use of the property. *See Fish v. Hodges*, No. 03–10–00532–CV, 2012 WL 2979078, at *3 (Tex. App.—Austin July 12, 2012, pet. denied) (mem. op.) ("[A] grantor who retains possession and use of the transferred land may acquire that land through adverse possession if, in addition to being open, notorious, exclusive, and inconsistent with the existence of title in others, the possession and use was of such a duration that it can be inferred that the tenancy was repudiated prior to the running of the ten-year limitation period."). Additionally, appellant overlooks his testimony before the jury that he never had any agreement with appellee pursuant to which appellant authorized appellee to close the business and open and operate Hinga's Automotive on the property, nor to change the business's name. Appellant also overlooks the testimony that appellant abruptly quit the business without any discussions with appellee about the property's future, and the testimony that anyone who left the business in its first ten years of operation automatically forfeited his interest in the business and the property.

Appellant next argues that appellee's possession was not adverse and hostile because he met with appellant on several occasions and advised appellant they needed to do something about the property. But appellee testified that he contacted appellant about the property because appellant "was crowding the title," while appellee was paying all of the taxes and operating costs. Appellee further testified that his reason for contacting appellant and offering him money to remove his name from the deed was to avoid the cost of filing suit to remove the cloud on the title. Appellee also testified that he reminded appellant about their ten-year agreement, pursuant to which appellant forfeited any interest in the business and property when he departed the business.

Viewing the evidence under the appropriate standard, we conclude the evidence in favor of the jury's finding for appellee on the "adverse and hostile" element of his adverse possession claim is not so weak as to be clearly wrong and unjust, and that there is factually sufficient evidence

to support the jury's finding that appellee peaceably and adversely possessed the property for a period of at least ten years before June 3, 2015.  We overrule appellant's sixth issue.

**IV. Exclusion of appellant's proposed jury questions**

Appellant's issues seven, eight, nine, ten, eleven, twelve, and thirteen concern the trial court's failure to submit to the jury appellant's proposed jury questions 1 through 7, which appellant submitted to the court before the charge conference.  Appellee responds that appellant failed to preserve error, and we agree.

Before giving the case to the jury, the trial court held a jury charge conference at which appellee raised no objections to the trial court's proposed charge.  Appellant made only two objections, arguing the charge did not include a question for the jury to determine whether or not the partnership owned the property, and that it should include a question for the jury to determine whether a purchase money resulting trust would be appropriate.  The relevant portion of the record reads as follows:

> THE COURT:  Let's go back on the record.
>
> At this time the Court will entertain objections for the record to the proposed charge of the Court.
>
> From the Plaintiffs?
>
> [APPELLEE'S TRIAL COUNSEL]:  No objection, Your Honor.
>
> THE COURT:  All right.  Thank you.
>
> You all may be seated.
>
> From the Defendants?
>
> [APPELLANT'S TRIAL COUNSEL]:  Thank you.  And now comes [appellant] with proposed and stated objections to the charge. We understand that the Court has refused to accept our proposed jury charges, and at this time we would ask that the Court to go ahead and sign off on the denial of our charges so that it can be uploaded into the system.
>
> So I have a clean copy, if I may approach?

–15–

THE COURT: Okay. Great. Thank you. And just for the record to be clear, there was something that was submitted after the Court prepared its final jury charge that was—that will be marked as untimely.

[APPELLANT'S TRIAL COUNSEL]: Yes, Your Honor. I understand that.

THE COURT: Okay. Please proceed.

[APPELLANT'S TRIAL COUNSEL] Okay. As we had stated, and I would re-urge this Court to consider submitting the issues of whether or not the partnership own **[sic]** the property in question here, which would be the real estate. And to make clear on the record, we're not referring to business asset or the mechanic shop or the business being run as an auto repair.

And the reason that we ask the Court to consider that is that should it be determined that it was a jury issue, then having this jury go ahead and make that decision, this Court is still within its power to enter a judgment notwithstanding the verdict. And we would ask for it to reconsider the issues we brought forth, particularly, in light of the fact that we've asked for this Court to submit an issue on a resulting trust, money purchased interest, and this Court has denied us on that.

We believe the evidence shows that would support a resulting trust because the ownership of this property, as the testimony was received in this court, was by a partnership. There was no evidence contrary to that. And as such, if the partnership took this property, then a purchase money resulting trust would be appropriate under the circumstances when the monies used to pay for the property at the time it was sent for the title were monies purely paid by [appellant], which the evidence shows.

So those would be our objections, Your Honor. And we're ready to proceed after this.

THE COURT: Great. Thank you.

Off the record.

"A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." *Id*. Additionally, to preserve error for appellate review, the rules generally require the complaining party to (1) make a timely objection to the trial court that 'state[s] the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds

–16–

were apparent from the context,' and (2) obtain a ruling. *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012) (quoting TEX. R. CIV. P. 33.1). On appeal, "the procedural requirements for determining whether a party has preserved error in the jury charge are explained by one basic test: 'whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.'" *Id*. (quoting *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992)). The purpose of these requirements is to give the trial court an opportunity to correct charge errors by requiring the objecting party to clearly designate the error and explain the grounds for its complaint. *See Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014).

In this case, the record shows the trial court did not rule on appellant's objections, nor did appellant request a ruling—stating only, "Great. Thank You." And appellant did not specifically object to the trial court's failure to submit any of his proposed jury questions or instructions. As a result, appellant did not preserve error regarding his proposed jury submissions. *See* TEX. R. CIV. P. 274; *Burbage*, 447 S.W.3d at 256; *Thota*, 366 S.W.3d at 689. We overrule appellant's issues seven, eight, nine, ten, eleven, twelve, and thirteen.[3]

## V. Granting appellee's motion for partial summary judgment

Appellant's issues fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, and twenty-two concern the trial court's decision to grant the appellee's motion for partial summary judgment on appellant's counterclaims for fraud, fraudulent inducement, statutory fraud, breach of fiduciary duty, breach of contract, civil conspiracy, declaratory judgment, and the affirmative defenses of fraud, estoppel, waiver, assumption of the risk, statute of frauds, unclean hands, and illegality.

---

[3] Notwithstanding appellant's oral objections to the court's omission from the charge of a purchase money resulting trust question or instructions for the alleged partnership, appellant did not, either before or during the charge conference, tender to the court a substantially correct purchase money resulting trust question or instructions for the jury to consider regarding the alleged partnership. Also, the court did not expressly rule on his oral objections, nor did he request a ruling. Hence, to the extent appellant is attempting to raise these matters on appeal, error has not been preserved. *See* TEX. R. CIV. P. 274; *Burbage*, 447 S.W.3d at 256; *Thota*, 366 S.W.3d at 689.

We review a trial court's grant of summary judgment de novo. *Pinkus v. Hartford Cas. Ins. Co.*, 487 S.W.3d 616, 621 (Tex. App.—Dallas 2015, pet. denied) (citing *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015)). The standards of review for traditional and no-evidence summary judgments are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (no-evidence motion for summary judgment); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985) (traditional motion for summary judgment). Regarding a traditional motion for summary judgment, the movant has the burden to prove that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *SeaBright*, 465 S.W.3d at 641; *see also Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996)). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. "No-evidence summary judgment is improper when the nonmovant's evidence amounts to 'more than a scintilla of probative evidence to raise a genuine issue of material fact.'" *Boerjan v. Rodriguez*, 436 S.W.3d 307, 312 (Tex. 2014) (quoting *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009)).

Beginning with appellant's fraud counterclaims and affirmative defenses—i.e., fraud, fraudulent inducement, and statutory fraud—a common law fraud claim requires a material misrepresentation, which was false, and that was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted on, which was relied on, and which caused injury. *Zorilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). Fraudulent inducement is a distinct category of common law fraud that shares the same elements but involves a promise of future performance made with no intention of performing it at the time

–18–

it was made. *Id*. To establish a statutory fraud claim, a plaintiff must prove (1) a transaction involving real estate or stock; (2) during the transaction, the other party made a false representation of fact, made a false promise, or benefitted by not disclosing that a third party's representation was false; (3) the false representation or promise was made for the purpose of inducing the party to enter into a contract; (4) the party relied on the false representation or promise by entering into the contract; and (5) the reliance caused the party injury. *Ginn v. NCI Bldg. Sys.*, 472 S.W.3d 802, 823 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also* TEX. BUS. & COM. CODE ANN. § 27.01. A viable claim for statutory fraud must relate to "a transaction involving real estate or stock in a corporation or joint stock company." TEX. BUS. & COM. CODE ANN. § 27.01(a); *Ginn*, 472 S.W.3d at 823. Courts have strictly construed this requirement, concluding that for fraud in a transaction to be actionable under section 27.01, the contract must "actually effect the conveyance" of real estate or stock between the parties, and it "cannot merely be tangentially related or a means for facilitating a conveyance" of real estate or stock. *Ginn*, 472 S.W.3d at 823.

Appellee argued in his no-evidence partial summary judgment motion that, for each of appellant's fraud claims, appellant had no evidence he reasonably relied on any material misrepresentations made by appellee, nor was there evidence of any damages suffered as a result of the alleged fraud. In his response, appellant identified the following four allegedly false statements that he relied on to his detriment:

> a. Mr. Mbogo represented that his interest in the Property needed to be placed in his sister, Mary Mbogo's name because she was the owner of the then existing business Universal Motor Works.
>
> b. During the initial discussions of entering into a partnership and the Partnership Agreement, Mr. Mbogo represented that he, through his sister, Mary Mbogo, would contribute $15,000.00 in working capital to the Partnership;
>
> c. During the initial discussions of entering into a partnership and the Partnership Agreement, Mr. Mbogo also represented that auto-repair equipment worth $15,000.00 would be contributed to the Partnership; and

d. Several years later, Mr. Mbogo represented that if Mr. Ahmed would let him continue operating an auto-repair business, Mr. Mbogo would pay the mortgage, taxes, and other expenses associated with the Property, while Mr. Ahmed would retain his interest in the Partnership and Property. See Exhibit A, Affidavit of Mohamed Ahmed. Furthermore, Mr. Mbogo did not reveal his tax problems to Mr. Ahmed until after Mr. Ahmed had made his offer to buy the Property.

In his summary judgment affidavit, however, appellant stated that shortly after agreeing to do business with appellee, but before they consummated the transaction, appellee began changing the structure of the deal and started revealing through his actions that his initial representations were false:

> Shortly after agreeing to do business together, Mbogo began changing the entire structure of the deal and started revealing through his actions that his initial representations were false. For starters, he falsely represented that his sister, Mary Mbogo, was the actual owner of the auto repair business located on the property. He did this despite the fact that Mbogo originally told me that Mbogo, himself, was the owner.

> As a result of this change, Mbogo said his sister, Mary Mbogo, would be on the property deed with me. Mbogo also said two additional parties, Charles Kaguma ("Kaguma") and Martin Nagana ("Nagana") should be listed as partners since they both worked in the auto shop with Mbogo and business was so good that he needed their help to keep up with demand. Further, he said that keeping them on would ensure that I could pay off the note. He also advised me that they are very good mechanics, and we need them to make the business profitable long-term.

Appellant stated that he disliked these changes but he had already negotiated a purchase price and terms with the seller of the property and was committed to buying it, thereby making it difficult to back out. Additionally, the changes appellee "brought to light did not surface until the real estate deal was near closing." Appellant alleged that he "relied on all of [appellee's] false representations to my detriment when deciding to enter the agreement and to keep it going after learning of some of the above issues."

The summary judgment record shows that although appellee's proposed changes and actions were "brought to light" before the parties closed on the property, appellant nonetheless purchased the property and entered into the business agreement. A party with actual knowledge

of the falsity of a representation cannot establish the reliance element of a fraud claim. *See Coastal Corp. v. Atlantic Richfield Co*., 852 S.W.2d 714, 719 (Tex. App.—Corpus Christi 1993, no writ) ("A finding of fraud requires proof that a party believed a deceitful representation and, relying on it, contracted or acted to its detriment."); *Koral Indus., Inc. v. Security–Connecticut Life Ins. Co*., 788 S.W.2d 136, 146 (Tex. App.—Dallas 1990, writ denied) ("[A]ctual knowledge is inconsistent with the claim that the allegedly defrauded party has been deceived, and it negatives the essential element of reliance upon the truth of the representations."); *see also Thrower v. Brownlee*, 12 S.W.2d 184, 186–87 (Tex. Comm'n App. 1929, judgm't adopted) ("Where false representations or promises are made to induce another to act, and, before such other does act, he learns of the falsity of such representations or promises, it cannot of course be said that he relied upon them believing them to be true, for, knowing their falsity, he has not been deceived.").

As for the fourth allegedly false statement identified by appellant, it was made "[s]everal years later" and related to appellee's continued operation of Universal Auto Repair after appellant had quit the business. A false statement made after the parties entered into their contract could not have induced the contract. *See Van Marcontell v. Jacoby*, 260 S.W.3d 686, 691 (Tex. App.—Dallas 2008, no pet.) ("[I]f at the time the parties entered into a written contract there had been no fraud or misrepresentation, the contract is binding on both parties and cannot be set aside for the representations of anyone occurring afterward because such representations could not have induced the contract.") (citing, in part, *Campbell v. Rushing*, 141 S.W. 133, 134 (Tex. Civ. App.—Fort Worth 1911, no writ)). Accordingly, we conclude the trial court properly granted no-evidence summary judgment for appellee on appellant's fraud counterclaims and affirmative defenses.[4]

Turning to appellant's claim for breach of fiduciary duty, to prevail on such a cause of

---

[4] Once we determine that the nonmovant failed to produce more than a scintilla of evidence under the no-evidence provisions of rule 166a(i), we need not determine whether the movant's summary judgment proof satisfied the burden for traditional summary judgment under rules 166a(c) and (d). *Gonzalez v. VATR Contr. LLC*, 418 S.W.3d 777, 782 (Tex. App.—Dallas 2013, no pet.).

action an injured party must prove (1) a fiduciary relationship existed between the plaintiff and the defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant. *Heritage Gulf Coast Props. v. Sandalwood Apts., Inc.*, 416 S.W.3d 642, 650 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010, no pet.).

In both his no-evidence and traditional motions for partial summary judgment, appellee argued, in part, that there was no fiduciary relationship between appellant and appellee. Appellant responded by arguing appellee and appellant "were partners, or in the alternative, [appellee] was Mary Mbogo's agent and represented her interest in the partnership[,]" and that "a fiduciary relationship existed between [appellee] and [appellant]." On appeal, appellant insists appellee's argument that no fiduciary duty existed is flawed because appellant's "claim for breach of fiduciary duty is premised on the existence of a partnership and not a corporation."

According to the summary judgment record, however, the entity the parties formed regarding the property was Universal Auto Repair, Inc., a corporation formed under the laws of the State of Texas. Appellant completed and submitted to the Texas Secretary of State articles of incorporation naming himself, appellant, Charles Kaguma, and Martin Nganga as the initial board of directors of Universal Auto Repair, Inc. The four named directors of that corporation owed a fiduciary duty to the corporation itself, not to each other. *See Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014); *Hoggett v. Brown*, 971 S.W.2d 472, 488–89 (Tex. App.—Houston [14th Dist.] 1997, writ denied) (defendant had no duty to inform plaintiff of proposed merger prior to board meeting because no fiduciary relationship existed between the parties, even though both were directors and shareholders of the same company; a director's fiduciary duty runs only to the corporation, not to individual shareholders or to a majority of the shareholders); *van Bavel v. Oasis Design, Inc.*, No. 03–97–00434–CV, 1998 WL 546342, at *6 (Tex. App.—Austin Aug. 31, 1998,

no pet.) (not designated for publication) ("While partners owe a fiduciary duty to each other, directors and officers of a corporation owe a fiduciary duty to the corporation for the benefit of the shareholders."). Based on the record in this case, we conclude appellant failed to raise a genuine issue of material fact and that he failed to produce more than a scintilla of evidence regarding the existence of a fiduciary relationship. Thus, the trial court did not err when it granted appellee's traditional and no-evidence motions for partial summary judgment as to appellant's claim for breach of fiduciary duty.

Appellant also argues that we should reverse the trial court's granting of summary judgment on his breach of contract counterclaim. However, according to appellant's live pleading in this case, his third amended counterclaim, and as expressly recognized by the trial court's order granting partial summary judgment, appellant never asserted a breach of contract counterclaim. Appellant is not entitled to reversal of the trial court's order based on an unpleaded counterclaim.

As for appellant's claim for conspiracy, appellant acknowledges that this counterclaim is dependent on the survival of at least one of his pleaded tort counterclaims (i.e., fraud, fraudulent inducement, statutory fraud, or breach of fiduciary duty). Appellant contends:

> Appellee argues that Appellant's claims for civil conspiracy must fail because there was no supporting underlying tort. C.R. at 400. But because this Court should and when it does reverse the Trial Court's grant of summary judgment as to Appellant's claims for fraud, fraudulent inducement, statutory fraud, or breach of fiduciary duty, as outlined above, then Appellee's only argument, that there is no underlying tort to support civil conspiracy, fails and there is no basis to dismiss appellant's claim for civil conspiracy. C.R. at 400, § F.

Appellant offers no other argument for why the trial court erred in granting summary judgment for appellee based on appellant's conspiracy counterclaim. Because we have already concluded appellant is not entitled to reversal of the trial court's summary judgment order based on his tort counterclaims, and appellant fails to provide us with any alternative argument, analysis or authority, we need not address this issue. *See* TEX. R. APP. P. 38.1(i) (brief "must contain a clear

and concise argument for the contentions made, with appropriate citations to authorities and to the record").

Turning to appellant's declaratory judgment counterclaim, in his declaratory judgment counterclaim appellant sought judgment declaring (1) his interest in the property; (2) the property was an asset of a partnership in which appellee has no interest; (3) appellant holds "fee simple title, with all right of title, possession and ownership in the Property described as city block 513 of the City of Dallas, Dallas County, Texas;" (4) appellee should be enjoined from pursuing any further legal action against appellant in an attempt to obtain or possess title of the property. Appellee moved for traditional summary judgment on the declaratory judgment counterclaim on the grounds it is barred by the statute of frauds and settled Texas law requiring a counterclaim for declaratory relief to seek some type of affirmative relief with greater implications than the original suit.

"A counterclaim for declaratory judgment is improper if it is nothing more than a mere denial of the plaintiff's claims and the counterclaim fails to have greater ramifications than the original suit." *Sanchez v. AmeriCredit Fin. Servs.*, 308 S.W.3d 521, 524 (Tex. App.—Dallas 2010, no writ) (citing *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990)). "To have 'greater ramifications' than the original suit, the counterclaim should seek some sort of affirmative relief." *Id.*

In this case, however, the request for relief in appellant's counterclaim for declaratory judgment does not have greater ramifications than appellee's original suit and is not independent of appellee's claim. "The Declaratory Judgments Act is 'not available to settle disputes already pending before a court'" or an issue that is "already before the court as part of the plaintiff's case." *BHP Petroleum Co.*, 800 S.W.2d at 841 (quoting *Heritage Life v. Heritage Grp. Holding*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied) and citing *John Chezik Buick v. Friendly Chevrolet*, 749 S.W.2d 591, 594 (Tex. App.—Dallas 1988, writ denied)). Therefore, the trial court

could have found that appellant cannot prevail on his counterclaim for declaratory judgment because it duplicated issues already pending before the court, i.e., the parties' ownership interest in the property, and that appellee was entitled to traditional summary judgment as to this claim. *See Heritage Life*, 751 S.W.2d at 235 ("This counterclaim merely restates Seller's defenses to issues already raised under Buyer's action for return of the earnest money.").

As for appellant's affirmative defenses of assumption of the risk, estoppel, waiver, statute of frauds, unclean hands, and illegality, appellant argues that appellee's reconsideration summary judgment motion did not move for summary judgment on the affirmative defenses of estoppel, waiver, statute of frauds, unclean hands, and illegality, as appellee had done in his original summary judgment filing. The reconsideration summary judgment motion sought summary judgment on only appellant's fraud and assumption of the risk affirmative defenses. Thus, argues appellant, we should reverse the trial court's grant of summary judgment on appellant's affirmative defenses of estoppel, waiver, statute of frauds, unclean hands, and illegality, and remand for a new trial on the merits.

In fact, however, as we noted previously, appellee specifically stated in the reconsideration motion that he was reurging the arguments in its original motion and incorporating, as if set forth in full, the briefing and attachments in the original motion. Appellant offers no other argument for why the trial court erred in granting summary judgment on his affirmative defenses of estoppel, waiver, statute of frauds, unclean hands, and illegality. To the extent appellant seeks to attack the summary judgment as to those claims, he has, therefore, waived that argument due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *Jackson v. U.S. Fid. and Guar. Co.*, 689 S.W.2d 408, 412 (Tex. 1985) (burden on appellant to show judgment of trial court rendered erroneously); *Ryan Construction Servs., LLC v. Robert Half International, Inc.*, 541 S.W.3d 294, 301 (Tex. App.— Houston [14th Dist.] Nov. 16, 2017, no pet.) (construction companies failed to properly brief

claims on appeal and to the extent they sought to attack the summary judgment entered against them as to those claims, they waived their argument due to inadequate briefing); *Blanks v. Liberty Mut. Fire Ins. Co.*, 196 S.W.3d 451, 452 (Tex. App.—Dallas 2006, pet. denied) (bare assertions of error, without argument or authority, present nothing for review).  We reach the same conclusion regarding the affirmative defense of assumption of the risk, which is also waived due to inadequate briefing.  *See* TEX. R. APP. P. 38.1(i).  We overrule appellant's issues fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, and twenty-two.

### VI.  Absence of a ruling on the record or a signed order

In his twenty-third and final issue, appellant contends the trial court erred in stating on the record, prior to the charge conference, that it had already ruled "the organization was not a partnership," when there was no ruling on the record, no signed order in the clerk's record, and the partnership could have owned the Ross Avenue property.  To the extent appellant is complaining about the absence of a ruling on the record or a written order from the trial court regarding the organization not being a partnership, there is no indication appellant lodged a relevant objection in the trial court, so this argument was not preserved.  *See* TEX. R. APP. P. 33.1(a).  Furthermore, we have already concluded appellant failed to preserve any argument that appellee had to prove adverse possession against a partnership, and we need not address the subject again.  We overrule appellant's final issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

170457F.P05

–26–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MOHAMED AHMED, Appellant

No. 05-17-00457-CV          V.

HINGA MBOGO, Appellee

On Appeal from the 101st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-15-06400.
Opinion delivered by Justice Myers.
Justices Lang-Miers and Boatright participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee HINGA MBOGO recover his costs of this appeal from appellant MOHAMED AHMED.

Judgment entered this 30th day of July, 2018.