Adolph R. KAZMIR and Ruth
S. Kazmir, Appellants

v.

Ruben A. BENAVIDES and Sylvia
Benavides, Appellees.

No. 14–08–00034–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 23, 2009.

John T. Unger, Houston, for Appellants.

Michael A. McEnrue, Houston, for Appellees.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and HUDSON.*

## OPINION

JOHN S. ANDERSON, Justice.

This is an adverse possession case. Appellants, Adolph R. Kazmir and Ruth S. Kazmir, appeal a final judgment rendered in favor of appellees, Ruben A. Benavides and Sylvia Benavides, awarding appellees title to and possession of an approximately four foot wide section of land that was originally part of appellants' lot. Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The properties at issue are Lot 12, located at 4310 Floyd Street, and Lot 13, located at 4308 Floyd Street. While not directly involved in the adverse possession suit, a third lot, Lot 14, located at 4306 Floyd, also plays a role in the events at issue here.

In the late 1950's the properties were owned as follows: Lot 12 was owned by Louis and Mary Cannalito, Lot 13 was owned by Lee and Mary DeForke, and Lot 14 was owned by Johnny and Sophie Cannalito. All of the owners were related. Mary DeForke and Johnny Cannalito, now

deceased, were two of Louis and Mary Cannalito's children. At a point not disclosed in the record, Louis Cannalito died intestate. On May 30, 1966, Louis Cannalito's wife and children deeded Lot 12 to Sam Cannalito, another son.

At a point in time before Louis Cannalito's death, the DeForkes erected a chain link fence around Lot 13. At the request of Johnny Cannalito, the DeForkes placed the fence between Lots 13 and 14 approximately 3½ feet inside the Lot 13 property line. This placement was to give Johnny Cannalito sufficient room to mow the grass on the side of his house. At the same time, the DeForkes built the fence on the Lot 12 side of their property about four feet inside the Lot 12 property line. This approximate four foot section is the area in dispute in this case (the "Disputed Area"). This fence remained in place and unchanged until January, 2005.

On March 27, 1967, Sam Cannalito sold Lot 12 to appellants. Adolph Kazmir admitted at trial that, at the time of the conveyance, Sam Cannalito showed him the location of a iron survey stake that marked the actual boundary between Lots 12 and 13. Mr. Kazmir also testified that he walked the property and found the fence was past the property line as indicated by the survey stake pointed out by Sam Cannalito. Mr. Kazmir also testified that, on a later, unspecified date, while appellants were away on vacation, the DeForkes built a concrete patio in their backyard right up to the chain link fence. According to Mr. Kazmir, the DeForkes did not seek or obtain his permission to build the patio. Also, while Mr. Kazmir realized the patio encroached on Lot 12, he did nothing to remove it himself, or to compel the DeForkes to remove it. In addition to the patio, the DeForkes built a concrete side-

* Senior Justice J. Harvey Hudson sitting by assignment.

walk connecting their front and back yards close to the fence between Lots 12 and 13. Both the patio and the sidewalk remained in place until appellants had them removed in January, 2005.

On August 24, 1973, appellees purchased Lot 13 from the DeForkes using a contract for deed. Under the contract for deed, appellees paid the insurance and taxes on Lot 13. Under the terms of the contract for deed, the DeForkes did not reserve a right of re-entry. Appellees eventually paid off the contract for deed and received a warranty deed for Lot 13 on April 30, 1997. The warranty deed mentions only the legal description of Lot 13.

On September 1, 1973, appellees took possession of Lot 13. Appellees did not have the property surveyed at that time. In addition, both appellees testified they believed they had purchased everything within the chain link fences. Appellees resided at Lot 13 for five years and during that period, they used the entirety of the yard between the fences. In addition, they used both the patio and the sidewalk. Appellees testified they planted trees and bushes next to the fence separating Lots 12 and 13. Appellees maintained the entire yard up to the fence. Finally, appellees did not share the yard with anyone during their residency.

In 1978, appellees moved to a new neighborhood and began renting Lot 13. Appellees rented Lot 13 continuously from 1978 until the time of the trial. Mr. Benavides testified that, during this period, appellees' tenants used the property in the same manner as appellees. While Mr. Kazmir testified during the trial, he did not offer any testimony controverting the continuous occupancy of Lot 13 or the tenants' use of Lot 13.

During his trial testimony, Mr. Kazmir admitted he never told appellees he claimed the Disputed Area. In addition,

Mr. Kazmir testified he never demanded that appellees get off his property and never told them to remove the sidewalk, the patio, or the trees near the fence.

In December 2004, appellees entered into an earnest money contract to sell Lot 13 to a developer. As part of the sale process, the developer had Lot 13 surveyed. The survey revealed the appellees' fence encroached approximately four feet into Lot 12. When appellants learned of the earnest money contract and the survey results, they tore out the fence between Lots 12 and 13, removed the sidewalk and the encroaching portion of the patio, and installed a new fence about four feet beyond the location of the original fence. Appellants then listed their house for sale. At this point, the developer backed out of the purchase of Lot 13 and appellants were required to refund the earnest money to the developer.

When efforts to negotiate a resolution of the dispute failed, appellees filed suit alleging ownership by adverse possession of the disputed area pursuant to sections 16.026 and 16.027 of the Texas Civil Practice and Remedies Code. Appellants counterclaimed for a declaratory judgment. Following a bench trial, the trial court entered judgment in favor of appellees and awarded them attorney's fees as well. This appeal followed.

## DISCUSSION

### A. Adverse Possession Under the Ten–Year Statute

■ Section 16.026(a) of the Texas Civil Practice and Remedies Code provides: "a person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." Tex. Civ. Prac. & Rem.Code

Ann. § 16.026(a) (Vernon 2002). If an action for the recovery of real property is barred by the ten-year statute of limitations, the person who holds the property in peaceable and adverse possession has full title, precluding all claims. *Id.* at § 16.030(a). Any ouster by the record title holder after the ten-year limitations period comes too late. *Sterling v. Tarvin,* 456 S.W.2d 529, 533 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.).

 "Peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property. Tex. Civ. Prac. & Rem.Code Ann. § 16.021(3). "Adverse possession" is defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Terrill v. Tuckness,* 985 S.W.2d 97, 107 (Tex. App.-San Antonio 1998, no pet.) *quoting* Tex. Civ. Prac. & Rem.Code Ann. § 16.021(1). Possession must be "actual, visible, continuous, notorious, distinct, hostile, and of such as [sic] character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Id.* at 107–08 *quoting Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990).

 The character of use required to establish adverse possession varies with the nature of the land and with its adaptability to a particular use. *Mohnke v. Greenwood,* 915 S.W.2d 585, 593 (Tex. App.-Houston [14th Dist.] 1996, no writ); *Vaughan v. Anderson,* 495 S.W.2d 327, 332 (Tex.Civ.App.-Texarkana 1973, writ ref'd n.r.e.). The adverse possession claimant need only use the land for some purpose to which it is adaptable, and in the same manner an ordinary owner would use the property. *Fuentes v. Garcia,* 696 S.W.2d 482, 485 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.). Whether adverse possession

has been established is ordinarily a question of fact. *Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex.1985).

 To prevail on a claim of adverse possession under section 16.026(a), the elements to prove by a preponderance of the evidence are: (1) actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) involves continuous cultivation, use, or enjoyment for ten years. *Glover v. Union Pac. R.R. Co.,* 187 S.W.3d 201, 213 (Tex.App.-Texarkana 2006, pet. denied) *citing Natural Gas Pipeline Co. v. Pool,* 124 S.W.3d 188, 193–94 (Tex.2003). The ten-year limitations period begins to run on the date the adverse possessor actually and visibly appropriates the claimed land. *Waddy v. City of Houston,* 834 S.W.2d 97, 103 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

## B. The Standard of Review

Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex. Civ.App.-Houston [14th Dist.] 1977, writ ref'd n.r.e.). When challenged on appeal, the findings are not conclusive if there is a complete reporter's record, as there is here. *Material Partnerships, Inc. v. Ventura,* 102 S.W.3d 252, 257 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Barrientos v. Nava,* 94 S.W.3d 270, 288 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The trial court's findings will not be disturbed if there is evidence of probative force to support them. *Id.*

A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). If an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate on appeal there is no evidence to support the adverse finding. *Price Pfister, Inc. v. Moore & Kimmey, Inc.,* 48 S.W.3d 341, 347 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id.* There is "no evidence" or legally insufficient evidence when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810.

■ We review the trial court's conclusions of law de novo. *Smith v. Smith,* 22 S.W.3d 140, 143–44 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Under de novo review, the reviewing court exercises its own judgment and redetermines each legal issue. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow,* 932 S.W.2d 627, 631 (Tex.App.-Houston [14th Dist.] 1996, no writ). Incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

### C. Is the evidence of appellees' continuous occupancy of Lot 13 legally sufficient?

■ Appellants focus their argument in their first issue on the undisputed fact that appellees began leasing Lot 13 in 1978. Appellants correctly assert appellees had the burden of proving continuity of possession between the several tenants. Appellants then contend appellees offered no probative evidence of continuity of possession between 1978 and 2005. Appellants do not dispute that an adverse possessor can assert his claim to property through a tenant. Instead, appellants argue appellees' uncontroverted testimony that they leased the property continuously from 1978 until the time of the trial and that the tenants used the property in the same manner as appellees, is legally insufficient because such testimony is general and conclusory. We disagree.

■ Whether a landlord's possession was continuous is a question of fact. *See Hankamer v. Sumrall,* 257 S.W.2d 827, 832 (Tex.App.-Beaumont 1953, writ ref'd n.r.e.). In this bench trial, it was the trial court's sole prerogative to weigh the credibility of appellees against the absence of controverting testimony from appellants, their longtime neighbors. *City of Keller,* 168 S.W.3d at 819. After hearing the testimony and viewing the documentary evidence, the trial court found this issue adversely to appellants. In fact, the trial court could not ignore appellees' undisputed testimony that was clear, positive, direct, otherwise credible, free from contra-

dictions and inconsistencies, and which could have been readily controverted. *Id.* at 820. We hold the evidence on appellees' continuous occupancy of Lot 13 is legally sufficient and overrule appellants' first issue.

### D. Did appellees, by purchasing Lot 13 through a contract for deed, acquire sufficient interest in Lot 13 to meet the exclusive occupancy requirement to adversely possess the Disputed Area?

■ Because they raise related arguments, we address appellants' second and third issues together.[1] Appellants' argument found in their second and third issues can be summarized as follows. The DeForkes took possession of the Disputed Area before 1967 by building the chain link fence between Lots 12 and 13, but there is no evidence the possession is adverse until 1967 at the earliest when the DeForkes poured the sidewalk and patio in the Disputed Area following appellants' purchase of Lot 12. Therefore, the DeForkes do not meet the ten-year requirement for adverse possession prior to selling Lot 13 to appellees using a contract for deed in 1973. Appellants then contend appellees, because they purchased Lot 13 using a contract for

deed, were the equivalent of tenants to the DeForkes, did not have exclusive possession of the property, and therefore did not acquire an interest in Lot 13 sufficient to begin the ten-year statute of limitations running for their own adverse possession of the adjacent Disputed Area.[2] Because appellees were "tenants" of the DeForkes, the DeForkes' adverse possession of the Disputed Area continued and matured sometime prior to 1997, the year appellees paid off the contract for deed and received a warranty deed for Lot 13 from the DeForkes. Appellants then assert that since the DeForkes' adverse possession of the Disputed Area had matured before appellees finished paying off the contract for deed, they could only convey their interest in the Disputed Area through a written instrument.[3] Because it is undisputed the 1997 warranty deed does not mention the Disputed Area but only references the legal description of Lot 13, appellants finish by arguing the judgment in favor of appellees must be reversed. We disagree with appellants' theoretical resolution of these issues.

■ Because of differences between a lease and a contract for deed, appellants'

1. Appellants' second issue provides:
 The [appellees] owned Lot 13 for less than ten years when they commenced this action. While a claimant may tack the claim of their predecessor in interest to their own for purposes of establishing the requisite period, if title by adverse possession matured in the predecessor, such claim of title can only be transferred by a written instrument. Did the trial court err by in effect finding that the Warranty Deed transferred such claim?
 Appellants' third issue provides:
 The [appellants] entered into possession of Lot 13 under a Contract for Sale. The [appellants] were in effect tenants of the owner of Lot 13 from 1973 until 1997. Did the trial court err in finding in effect that the [appellants] claimed the property as their

own from 1973 until 2005 contrary to the exclusivity requirement stated by the Texas Supreme Court in *Carter v. Holmes*[, 131 Tex. 365, 113 S.W.2d 1225, 1226 (1938)]?

2. Appellants cite to the case of *McShan v. Pitts* in support of their argument appellees were tenants of the DeForkes. *See McShan v. Pitts*, 554 S.W.2d 759, 763 (Tex.App.-San Antonio 1977, no writ) (stating that possession by a tenant is considered to be the possession of the landlord for purposes of the statute of limitations).

3. Appellants cite the case of *Dale v. Stringer* for this proposition. *See Dale v. Stringer*, 570 S.W.2d 414, 418(Tex.App.-Texarkana 1978, writ ref'd n.r.e.).

reliance on *McShan* in support of their proposition that adverse possession of property by a person holding adjacent property through a contract for deed inures to the benefit of the seller rather than the purchaser is inapposite. The Texas Property Code defines a "tenant" as a person who is authorized by a lease to occupy a dwelling to the exclusion of others. Tex. Prop.Code Ann. § 92.001(6) (Vernon 2007). A contract for deed is an agreement by a seller to deliver a deed to property once certain conditions have been met. *Graves v. Diehl,* 958 S.W.2d 468, 470 (Tex.App.-Houston [14th Dist.] 1997, no pet.). *McShan* does not involve a contract for deed situation, but instead addresses the continuity of adverse possession when the contested land and adjacent property has been leased to a tenant for a period of time. *McShan,* 554 S.W.2d at 760–63. Therefore, the *McShan* court's statement that a tenant's possession of land inures to the benefit of the landlord does not control the outcome in this case. *Id.* at 763.

Instead, we hold the contract for deed passed sufficient interest in Lot 13 for appellees to have exclusive possession of Lot 13 and the Disputed Area and commence adverse possession of the Disputed Area for their own benefit. *See Graves,* 958 S.W.2d at 472 (in a nuisance case, court held that parties possessing property under a contract for deed had sufficient interest in the property to permit an action for nuisance against a third party); *see also City of Austin v. Capitol Livestock Auction Co.,* 453 S.W.2d 461, 464 (Tex. 1970) (a purchaser in possession pursuant to a contract for deed is entitled to the condemnation award in an eminent domain case). Because appellees' obtained exclusive possession of Lot 13 through the 1973

contract for deed, we conclude appellees did not need to rely on any alleged adverse possession by the DeForkes to meet the ten-year statute of limitations. Instead, appellees' adverse possession commenced in 1973 when they occupied Lot 13 and the Disputed Area and their claim under the ten-year statute of limitations matured in 1983. We overrule appellants' second and third issues.

**E. Is the evidence of appellees' intent to claim and visible appropriation of the Disputed Area legally sufficient?**

In their fourth and fifth issues, appellants contend there was legally insufficient evidence of appellees' intent to claim and visible appropriation of the Disputed Area.[4] Again, we disagree.

■ To establish adverse possession, a claimant must enter the land with a claim of right that is hostile and inconsistent with the claim of another person. Tex. Civ. Prac. & Rem.Code Ann. § 16.021(1). "Hostile" use does not require an intention to dispossess the rightful owner, or even knowledge that there is one. *Tran v. Macha,* 213 S.W.3d 913, 915 (Tex.2006). However, there must be an intention to claim the property as one's own to the exclusion of all others. *Id.* Belief that one is the rightful owner and has no competition for the ownership of the land at issue is sufficient intention of a claim of right. *Calfee v. Duke,* 544 S.W.2d 640, 642 (Tex.1976); *Julien v. Baker,* 758 S.W.2d 873, 877 (Tex.App.-Houston [14th Dist.] 1988, pet. denied). A visible appropriation may be taken as evidence of a claim of right when the claim of right is not otherwise expressed. *Ramirez v.*

4. Because of our resolution of appellants' second and third issues, we need not address that part of appellants' fourth issue challenging the legal sufficiency of the evidence supporting the DeForkes' intent to claim the Disputed Area. Tex.R.App. P. 47.1.

*Wood,* 577 S.W.2d 278, 287 (Tex.Civ.App.-Corpus Christi 1978, no writ).

 Within these issues, appellants argue the fence between Lots 12 and 13 was a casual fence and must be ignored in our analysis. Assuming appellants' contention that we cannot consider the fence itself as evidence of appellees' hostile intent to possess and visible appropriation of the Disputed Area is true, there is still legally sufficient evidence of appellees' intent to claim and visible appropriation of the Disputed Area. Here, appellees testified they believed they were purchasing everything within the fences around Lot 13. They also testified they used the entire yard up to the fences, including the sidewalk and patio. There was evidence appellees installed a swing set on the patio in the Disputed Area, used the patio and sidewalk on a regular basis, planted trees and bushes in the Disputed Area next to the fence, and maintained the yard up to the fences. We hold this is legally sufficient evidence of appellees' hostile intent to possess and visible appropriation of the Disputed Area. We overrule appellants' fourth and fifth issues.

## CONCLUSION

Having overruled all of appellants' issues on appeal necessary for a final disposition of the appeal, we affirm the trial court's final judgment.