**Affirmed and Memorandum Opinion filed September 14, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00843-CV

---

### EITAN LEVY AND NILI LEVY, Appellants

### V.

### GARY LEACH, Appellee

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2015-56345**

---

## M E M O R A N D U M   O P I N I O N

This appeal involves a dispute between neighbors over title to a portion of a residential lot. Appellants Eitan and Nili Levy sued appellee Gary Leach for trespass to try title and declaratory relief, alleging that Leach wrongfully fenced a 314 square foot portion of appellants' lot. Leach countersued for, as is relevant here, adverse possession under the ten-year adverse possession statute.[1] Following a bench trial,

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 16.026.

the trial court signed a final judgment in Leach's favor, declaring that Leach holds legal and record title to the disputed land and ordering that the Levys take nothing. The trial court signed findings of fact and conclusions of law in support of its judgment. Principally, the court found that Leach has matured limitations title under section 16.026 and is therefore entitled to title and possession of the disputed property.

The Levys raise several arguments that in substance amount to evidentiary sufficiency challenges. They contend that: (1) Leach's "mistaken fence positioning" was so slight an encroachment that they must be excused from "taking notice of a hostile encroachment despite the visibility of the fence"; (2) Leach's fence was a "casual fence," not a "boundary fence," which is insufficient to prevail on an adverse possession claim; and (3) there is an "unreliable and speculative commencement date" for construction of the fence.

Having reviewed the record, we conclude that legally and factually sufficient evidence supports the findings. Accordingly, we affirm the trial court's judgment.

## Background

The Levys and Leach own neighboring properties in the Memorial area of Houston. Each lot exceeds 1.3 acres—50,000 to 60,000 square feet. Both properties front Little John Lane. This suit involves a roughly 314 square foot triangle-shaped part of land that belonged to the Levys (the "disputed land"), but around which Leach constructed a fence. According to Leach and his fence builders, Paul Marsh and Charles Jernigan, the fence was completed around mid-June 2005, shortly after Leach purchased the property in February 2005. Part of the disputed land is shown in the following photograph and appears to the immediate left of the driveway:



Leach's lot appears generally on the right side of this photograph and is fenced; the Levys' lot is on the left side of the picture. The boundaries of the disputed land are indicated in the survey reproduced below. The eastern side of the disputed land fronts Little John Lane and is 8.57 feet long. The southern side extends approximately 75 feet into the main property. An 8-foot-high wrought iron fence runs along the disputed land's eastern and southern sides. Leach's property is shown at the top of the survey, as Lot 4; the Levys' property is Lot 5.



DEFENDANT'S TRIAL EXHIBIT "8"
Page 2 of 2

The Levys agreed that they had an unimpeded view of the "very, very obvious" fence surrounding the disputed land, which fronts Little John Lane, and both had driven past the fence daily. Nonetheless, they claimed they were unaware that Leach's fence encroached on their property until December 2013 when they commissioned for other purposes a survey of their property, the relevant page of which is shown above.

According to the Levys, before 2013 the disputed land was full of brush and trees, and "no one was able to see what's going on there." The Levys testified that they had no way of knowing that Leach's fence encroached on their property.

The parties disputed whether Leach's iron fence replaced an existing chain-link fence that ran the full length of the property line. The Levys testified that a chain link fence existed between the two properties before Leach replaced it with the iron fence. Nili Levy testified that Leach removed parts of the existing fence

4

when he installed the wrought iron fence, though she did not remember exactly where the chain link fence ran and that it may not have followed the same path as the wrought iron fence. Leach, on the other hand, testified that the chain link fence did not run the entire length of the property line and stopped before reaching the disputed land. According to Leach, the disputed land was not enclosed by any fence before he added the wrought iron fence. Leach's fence builders, Marsh and Jernigan, confirmed that no chain link fence was removed from the disputed land when they installed the wrought iron fence. Leach testified that he instructed his fence builders to follow the chain link fence line and, where it ended, to follow the landscaped area, in constructing the new wrought iron fence. The following photograph depicts Leach's property before the iron fence was installed, viewed from Leach's driveway looking toward Little John Lane:[2]



DEFENDANT'S TRIAL EXHIBIT "13"
Page 1 of 1

---

[2] According to Leach, he took this picture in December of 2004, shortly before he purchased the property.

5

The Levys' lot, from this angle, is on the right side of the picture. The disputed land is also on the right-hand side of the photograph, along the driveway.

Leach testified that he installed the fence around what he believed to be the entirety of his property to secure his home and keep his dogs from roaming. According to Leach, he intended to enclose the disputed land and believed it was part of his lot. After he moved into the property, Leach installed an extensive drainage system that included a large sump pump on the disputed land. He stated he has continuously maintained and excluded others from access to the disputed land since the fence was installed. The disputed land's landscaping had been maintained by the previous owners rather than by the Levys.

Following the bench trial, the court signed a judgment in Leach's favor, determining that Leach holds legal and record title to the disputed land. The trial court found the following relevant facts:

> 1. Since on or about January 2, 1988, and at all times relevant herein, [the Levys] have owned the real property located at 505 Little John Lane, Houston, Texas 77024 . . . , abutting [Leach's] property.
>
> 2. Since on or about February 14, 2005, [Leach] has owned the real property located at 515 Little John Lane, Houston, Texas 77024 . . . , abutting the [Levys'] property.
>
> 3. Not later than July 31, 2005, [Leach] constructed a new eight foot tall wrought iron fence 74.34 feet in length and 8.57 feet in width, bordering and enclosing 0.0072 acre/314 square feet of real property awarded to [Leach] by judgment rendered in this suit into [his] 515 Little John Lane real property.
>
> 4. [Leach] constructed the fence to secure his property and dogs.
>
> 5. No chain link or other fence surrounded or bordered any portion of the property awarded to [Leach] by the judgment rendered in this suit at the time [Leach] constructed [his] fence.
>
> 6. On or before July 31, 2005, [Leach] intended and claimed the property awarded to [him] by the judgment rendered in this suit as real

6

property solely owned by [him] to the exclusion of [the Levys] and all other persons.

7. A reasonably prudent and diligent adjoining lot owner would have actual notice of [Leach's] appropriation and intent to possess the real property awarded to [him] by the judgment rendered in this suit by virtue of [the Levys'] unimpeded visual observation of [Leach's] construction of 8.57 feet of 8 feet tall wrought iron fencing facing Little John Lane and encroaching on the [Levys'] property.

8. [Leach] has had continuous possession of the property awarded to [him] by the judgment rendered in this suit for a period of more than ten years preceding the [Levys'] September 22, 2015 filing of this trespass to try title suit.

9. [Leach] has enjoyed possession of the property awarded to [him] by the judgment rendered in this suit since on or before but no later than July 31, 2005, continuously to the present time.

10. [Leach] has cultivated, used and had the enjoyment of the property awarded to [him] by the judgment rendered in this suit since on or before but no later than July 31, 2005, continuously to the present time.

11. [Leach] has held the property awarded to [him] by the judgment rendered in this suit under an adverse and hostile claim since on or before but no later than July 31, 2005, continuously to the present time.

12. [Leach] has had exclusive dominion over the property awarded to [him] by the judgment rendered in this suit and appropriated it to [his] sole use since on or before July 31, 2005, continuously to the present time.

Based on these facts, the court concluded, in relevant part:

1. Title to the property awarded to [Leach] by the judgment rendered in this suit is vested in [Leach].

2. [Leach's] fence constructed on the property awarded to [him] by the judgment rendered in this suit is not a casual fence.

3. [Leach's] visible appropriation and possession of [the Levys'] real property was sufficient to place [them] on notice of [Leach's] actual and visible appropriation of [the Levys'] real property.

7

4. [Leach] has matured limitations title under the ten year Statute, § 16.02[6](a) of the Texas Civil Practice and Remedies Code and is, therefore, entitled to title and possession of the property awarded to [him] by the judgment rendered in this suit. . . .

The Levys timely appealed.

## Issues Presented

The Levys state four issues for our review:

(1) Whether the trial court's final judgment in favor of Mr. Leach awarding him title to the encroached upon property in dispute by adverse possession was flawed as a matter of law or against the great weight and preponderance of the evidence;

(2) Whether the trial court erred as a matter of law or in its fact findings in ignoring that because of [Mr.] Leach's mistaken fence positioning was so slight an encroachment, then the Levys must be excused from taking notice of a hostile encroachment despite the visibility of the fence;

(3) Whether the trial court erred as a matter of law or by the great weight or preponderance of the evidence that the wrought iron fence constructed by Mr. Leach which was intended to maintain the pre-existing boundary was a boundary fence (required by adverse possession law) and not a casual fence (insufficient to establish an adverse possession claim); and

(4) Whether the trial court erred as a matter of law or against the great weight and preponderance of the evidence in awarding title and possession of the property to Mr. Leach under the 10-year Statute § 16.02[6](a) of the Texas Civil Practice and Remedies Code because of unreliable and speculative fence commencement dates.

## Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review the trial court's findings using the same standards of review applicable to a jury verdict. *See MBM Fin. Corp. v. Woodlands Operating*

8

*Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). Unchallenged findings of fact are binding on this court "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. Our task is to determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* As long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the factfinder. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.*

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). When a party challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, we set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* at 407. We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Id.* The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

In an appeal from a nonjury trial, a sufficiency challenge must be directed at a specific finding, rather than the judgment as a whole. *See Zagorski v. Zagorski*, 116 S.W.3d 309, 319 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Carter v. Carter*, 736 S.W.2d 775, 777 (Tex. App.—Houston [14th Dist.] 1987, no writ). They Levys do not attack any specific findings by the trial court, but reading all sections of their brief together, we construe their arguments as challenging the sufficiency of the evidence to establish that Leach's possession of the disputed land (a) was adverse and hostile to the Levys' claim, (b) was open and notorious, and (c) lasted for the requisite ten years. *See Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (identifying these elements, among others, as those necessary to prevail on a ten-year statutory adverse possession claim); *see also, e.g.*, *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633 (Tex. 1986) ("It is our practice to liberally construe the points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants. We look not only at the wording of the points of error, but to the argument under each point to determine as best we can the intent of the party.").

## Adverse Possession Under the Ten-Year Statute

Civil Practice and Remedies Code section 16.026(a) provides that "[a] person must bring suit not later than ten years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." Tex. Civ. Prac. & Rem. Code § 16.026(a). "Adverse possession" means "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id.* § 16.021(1). If an action for the recovery of real property is barred by the ten-year limitations period, the person who holds

10

the property in peaceable and adverse possession has full title, precluding all claims. *Id.* § 16.030(a).

To prevail on the ten-year limitations period in section 16.026, a person claiming possession of property adversely must prove that the person actually and visibly possessed the disputed property, and the possession: (a) was adverse and hostile to the claim of the record title owner; (b) was open and notorious; (c) was peaceable; (d) was exclusive; and (e) involved continuous cultivation, use, or enjoyment for ten years. *Kazmir*, 288 S.W.3d at 561; *see also Gutierrez v. Lorenz*, No. 14-18-00608-CV, 2020 WL 1951606, at *3 (Tex. App.—Houston [14th Dist.] Apr. 23, 2020, no pet.) (mem. op.). "Visible appropriation" is required; mistaken beliefs about ownership do not transfer title until someone acts on them. *Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006) (per curiam); *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985); *see also Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 198 (Tex. 2003) (holding that "a record titleholder's ignorance of what it owns does not affect the running of limitations"). Peaceable possession means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property. Tex. Civ. Prac. & Rem. Code § 16.021(3). The "possession must be of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990). However, the character of use required to establish adverse possession varies with the nature of the land and its adaptability to particular uses. *Kazmir*, 288 S.W.3d at 561. An adverse possession claimant need only use the land for some purpose to which it is adaptable, in the same manner an ordinary owner would use the property. *Id.*

Whether a person has acquired title to property by ten years of adverse possession typically presents a fact question, *Bywaters*, 686 S.W.2d at 595, though

title may be shown as a matter of law when the facts are conclusive. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 757-58 (Tex. 2003).

## Analysis

### A. Sufficient evidence shows that Leach intended to claim the disputed land.

The trial court found that Leach intended to claim the disputed land "to the exclusion of [the Levys] and all other persons." In the first part of their argument, the Levys challenge whether the evidence shows that Leach intended to claim the disputed land to the exclusion of all others.

Leach testified that he intentionally built the fence around the disputed property, and he stated that he believed he was enclosing his own property. The "belief that one is the rightful owner and has no competition for the ownership of the land is sufficient intention of a claim of right." *Kazmir*, 288 SW.3d at 564 (citing *Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex. 1976) (finding legally sufficient evidence of hostile intent necessary for adverse possession when claimants believed they were purchasing everything within fences around lot)). Even "mistaken beliefs about ownership do not transfer title until someone acts on them." *Tran*, 213 S.W.3d at 914. "An adverse-possession claimant who builds and maintains fences to enclose another's property is exerting an exclusive ownership in himself or herself that is hostile to the landowner." *Dudley v. Johnson*, No. 06-14-00013-CV, 2014 WL 3973943, at *3 (Tex. App.—Texarkana Aug. 15, 2014, no pet.) (mem. op.)) (citing *McDonnold v. Weinacht*, 465 S.W.2d 136, 141 (Tex. 1971), *Tran*, 213 S.W.3d at 914); *see Kazmir*, 288 S.W.3d at 564-65 (explaining that a "visible appropriation may be taken as evidence of a claim of right when the claim is not otherwise expressed"); *Masonic Bldg. Ass'n of Houston, Inc. v. McWhorter*, 177 S.W.3d 465, 473-74 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("Although the McWhorters did not 'intend to take' the MBA's property because they thought that

12

they rightfully owned the land, the Rubensteins, the Echols, and the McWhorters intended to use the property exclusively as their own—and did use it to the exclusion of the MBA with respect to the middle section.").

Here, it is undisputed that Leach acted on his belief of ownership by constructing a fence around the disputed land. *See Tran*, 213 S.W.3d at 915. His construction of the fence around the disputed land, though based on a mistaken belief of ownership, indicates nonetheless "unmistakably an assertion of a claim of exclusive ownership." *See Rhodes*, 802 S.W.2d at 645; *see also Kazmir*, 288 S.W.3d at 564-65; *McWhorter*, 177 S.W.3d at 474.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that reasonable and fair-minded people could find that Leach intended to claim the disputed land and exclude others. *See City of Keller*, 168 S.W.3d at 827. As well, viewing the evidence in a neutral light, the court's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 407. Thus, we conclude both legally and factually sufficient evidence supports the court's finding that Leach intended to claim the disputed land and exclude others. We overrule this portion of the Levys' argument.

**B.     Leach's construction of an 8-foot-high fence provided sufficient notice of his hostile possession of the disputed land.**

The trial court also found that "a reasonably prudent and diligent adjoining lot owner" would have actual notice of Leach's appropriation and intent to possess the disputed land based on the "unimpeded visual observation" of Leach's 8-foot-tall wrought iron fencing facing Little John Lane and "encroaching on the [Levys'] property." In the next part of their argument, the Levys contend that Leach's actions

did not "reasonably notify the Levys that a hostile claim was being asserted to the property." Again, we disagree.

Although Leach testified that he thought he was building a fence around his own property, "'hostile' use does not require an intention to dispossess the rightful owner[.]" *Tran*, 213 S.W.3d at 915. However, "[i]f there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible acts that knowledge on the part of the owner will be presumed." *Osborn v. Deep Rock Oil Corp.*, 267 S.W.2d 781, 787 (Tex. 1954).

The Levys admitted that they had driven by the "obvious" wrought iron fence that encloses the disputed area almost daily, and sometimes multiple times a day, since it was constructed more than ten years before they filed suit. Leach testified that he built the permanent fence enclosing the area and has maintained the disputed land for over ten years. Since fencing the area, he also installed additional improvements, such as the drainage system sump pump. "The fencing of land has long been recognized as visible appropriation." *Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 439-40 (Tex. App.—Texarkana 2006, no pet.); *see also Dudley*, 2014 WL 3973943, at *3; *McWhorter*, 177 S.W.3d at 474. The Levys' lack of knowledge concerning their own property boundaries cannot defeat Leach's adverse possession. *See Brownson v. Scanlan*, 59 Tex. 222, 226 (1883) ("[T]he party holding the superior title would not be excused for ignorance of the particular claim of right under which the premises were held by those in possession. He is not in the condition of an ordinary and casual observer, but must diligently look to his own interests, know the boundaries of his own land, and ascertain the extent, meaning and locality of any settlement made within them without his authority."); *Wilson v. Siegel*, 167 S.W. 1090, 1091 (Tex. App.—Amarillo 1914, no writ) (same); *see also*

14

*Burton v. Holland*, 278 S.W. 252, 254 (Tex. App.—Beaumont 1925, writ ref'd) ("In order to make a good claim by adverse possession, the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, notorious, distinct, and hostile as to raise the presumption of notice that the rights of the true owner are invaded intentionally and with the purpose of asserting a claim of title adverse to his, so patent that the owner could not be deceived, and such that if he remains in ignorance thereof it is his own fault.").

Despite their acknowledgement that the fence enclosing the disputed land was open and obvious, the Levys contend that Leach's encroachment on their property was "miniscule" and so slight as to be insufficient to put them on notice of actual, visible appropriation of their land. They rely on *McCallister v. Samuels*, 857 S.W.2d 786, 777 (Tex. App.—Houston [14th Dist.] 1993, no writ), in which our court determined as a matter of law that a nine-inch encroachment onto a lot was "so slight as to be insufficient to put the Samuels on notice of actual, visible appropriation of their land." Unlike in *McCallister*, however, the encroachment at issue here was much larger than the nine-inch encroachment there at issue: Leach's fence encroached over eight feet onto the Levys' property and encompassed an area of roughly 314 square feet. *McCallister* is readily distinguishable.

Moreover, the encroachment occurred in an area by which the Levys admittedly passed on at least a daily basis, and the fence at issue was, as Nili Levy testified, "very, very obvious." For all the above reasons, reasonable and fair-minded people could find the fact at issue, and this finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We conclude that legally and factually sufficient evidence supports the trial court's finding. We overrule this portion of the Levys' argument.

15

**C.** **The Levy's "casual fence" argument does not support reversal.**

The Levys contend as "an alternative ground for reversal" that "the wrought iron fence is a casual fence that does not establish adverse possession." The "casual fence" doctrine arose in rural grazing land disputes. *See Mohnke v. Greenwood*, 915 S.W.2d 585, 593 (Tex. App.—Houston [14th Dist.] 1996, no writ). As we explained in *Mohnke*:

> The case law distinguishes between two types of enclosures for adverse possession purposes: "casual fences" and fences that "designedly enclose" an area. The need for this distinction between types of enclosures arose because, in Texas, owners of livestock are not required to fence in or tether their cattle. As a result, Texas has always treated unenclosed lands as commons for grazing livestock. Therefore, the use of unenclosed lands for grazing livestock, because it is allowed by law, cannot of itself constitute adverse possession.

*Id.* (citations omitted). Thus, "the mere grazing of land incidentally enclosed by a fence created by others cannot support a claim of adverse possession." *Id.*; *see also Rhodes*, 802 S.W.2d at 646 (explaining that grazing cattle and goats on disputed land tract was insufficient to establish title by adverse possession "unless the cedar tracts were designedly enclosed for the Cahill's use"); *McDonnold*, 465 S.W.2d at 141-42 ("The adverse claimant who relies upon grazing only as evidence of his adverse use and enjoyment must show as part of his case that the land in dispute was designedly enclosed."); *Stafford v. Jackson*, 687 S.W.2d 784, 787 (Tex. App.—Houston [14th Dist.] 1985, no writ) (same).

The Levys urge that the casual fence doctrine applies in residential disputes like this one; that Leach's wrought iron fence is a casual fence; and because Leach's fence is a casual fence, its existence cannot support a change in title to the disputed land based on adverse possession. In response, Leach disputes among other things whether the casual fence doctrine applies.

16

We need not decide whether the casual fence doctrine is viable in a residential land dispute. *See KB Tex. Invs., LLC v. Spiller*, No. 01-16-00068-CV, 2017 WL 372164, at *10 (Tex. App.—Houston [1st Dist.] Jan. 26, 2017, no pet.) (mem. op.) (explaining that distinction between casual and designedly enclosed fences is "conceptually useful in rural grazing land disputes," but "unnecessary in residential neighborhood disputes," but ultimately not deciding the question). As we have explained above, there exists both legally and factually sufficient evidence to support the trial court's findings that Leach's construction of the 8-foot-high fence around the disputed land provided notice to the Levys of his hostile claim to their property.

Assuming for argument's sake that the casual fence doctrine is relevant here, it would not support the Levys' challenge to the trial court's findings in Leach's favor. According to the Levys, Leach simply repaired or maintained a pre-existing "casual" chain link fence in the area but did not "designedly enclose" the disputed land, which is an insufficient basis to support his adverse possession claim. *See, e.g.*, *Rhodes*, 802 S.W.2d at 646 ("Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, generally does not change a casual fence into a designed enclosure."). The evidence whether a chain link fence existed previously, and its location, was disputed. Leach and his fence builders testified that when they built the 8-foot-high fence, the disputed land was not enclosed by any fencing at all. The Levys, on the other hand, testified that there was a pre-existing chain link fence in the general area where Leach built his fence. The trial court, as the sole judge of the parties' credibility,[3] was entitled to believe Leach's and his fence builders' testimony that no fence

---

[3] *E.g.*, *Matter of Hashimi*, No. 14-17-00488-CV, 2018 WL 4136903, at *5 (Tex. App.—Houston [14th Dist.] Aug. 30, 2018, no pet.) (mem. op.) (explaining that, in a bench trial, the trial court is the sole judge of witness credibility, may accept or reject witness testimony, and may resolve inconsistencies in witness testimony).

existed around the disputed area until Leach's fence was built. Thus, there exists some evidence that Leach "designedly enclosed" the disputed area, and the casual fence doctrine, to the extent it is applicable here, is defeated. *See Koenig v. First Am. Title Ins. Co. of Tex.*, 209 S.W.3d 870, 875 n.2 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

We conclude that the trial court's finding that "no chain link or other fence surrounded or bordered any portion of the property awarded to [Leach]" at the time Leach constructed his fence is supported by legally sufficient evidence. And this finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust; thus, it is supported by factually sufficient evidence. Accordingly, we overrule this portion of the Levys' argument.

## D. Sufficient evidence supports the trial court's finding that Leach's fence was constructed "not later than July 31, 2005."

In their final argument, the Levys contend that the "commencement of adverse possession [is] too speculative to support [Leach's] claim." According to the Levys, the testimony of Leach and the fence builders, Marsh and Jernigan, concerning the completion date of the fence does not sufficiently support Leach's adverse possession claim. Again, we disagree.

None of the witnesses could identify a specific date on which the fence was completed. Leach, Marsh, and Jernigan acknowledged that they had previously identified earlier completion dates in affidavits. Nonetheless, Leach, Marsh, and Jernigan all consistently testified that the fence was completed by June or July 2005. The Levys did not testify to any different dates, and they could not recall exactly when the fence was completed. The trial court, as the factfinder, resolved any inconsistencies in the testimony and found that the fence was completed no later than July 31, 2005. *See, e.g.*, *Matter of Hashimi*, 2018 WL 4136903, at *5. This

finding is supported by some evidence, and the Levys presented no controverting evidence of any different date.

In sum, viewing the evidence either in favor of the trial court's finding or in a neutral light, both legally and factually sufficient evidence supports the finding that the fence was constructed not later than July 31, 2005. We overrule the Levys' final challenge.

## Conclusion

For the above reasons, we affirm the trial court's judgment.


/s/     Kevin Jewell
        Justice


Panel consists of Justices Jewell, Bourliot, and Hassan.